FOWLER, Etc. *v.* SMITH, et ux.

[No. 440, September Term, 1964.]

*Decided October 20, 1965.*

The cause was argued before PRESCOTT, C. J., and HAM-MOND, MARBURY, OPPENHEIMER and BARNES, JJ.

*Donald L. Merriman,* with whom were *Merriman & Merriman* on the brief, for appellants.

*Phillips L. Goldsborough, III,* with whom were *Smith, Somerville & Case* on the brief, for appellees.

PRESCOTT, C. J., delivered the opinion of the Court.

This appeal involves an action brought by the individual plaintiff, John A. Fowler, and by his employer's workmen's compensation insurer, for personal injuries suffered by Fowler, and compensation paid him as a result thereof. He was injured, while attempting to walk across a public highway in

Baltimore County, by a panel truck operated by the defendant, George W. Smith. Smith's wife was joined with him as a defendant, but the trial court directed a verdict in her favor on the ground that there was no showing that she would be responsible under the doctrine of *respondeat superior*. In the view that we take of the case, it will be unnecessary to determine the correctness of this ruling; hence George W. Smith, alone, will be referred to hereafter as the defendant. The jury returned a verdict in favor of the defendant, and the plaintiff has appealed.

Appellant contends that the trial court (a) committed error in admitting the testimony of the investigating police officer as to a skid mark located on the highway at or near the accident scene; (b) in instructing the jury that there was no evidence in the case legally sufficient to prove that the speed of the defendant's truck caused or contributed to the accident; (c) and in directing a verdict in favor of the defendant, Eleanora Smith.

The accident in question occurred on June 12, 1959, at about 7:30 a.m. on Middletown Road (the Road), a public highway 21 feet in width, in Baltimore County. The road runs generally east and west. The scene of the accident was a point some 300 to 400 feet west of a recently completed bridge over an expressway. The paving of the road had been completed, and it had been open to traffic for several months prior to the accident. The grading work on the approach ramps to the east of the expressway had been completed, but some grading work on the ramps to the west remained to be completed. The plaintiff, Fowler, who was a grade foreman for the construction company working upon the Road, was riding as a passenger on a grader, which was about 8 feet wide by 16 feet long, as it proceeded west over the bridge and to a point about 400 feet west thereof.

The testimony is conflicting as to the position on the roadway of the grader, whether or not it was moving at the time of the accident, and Fowler's actions just prior to the collision. More will be stated with reference thereto under the specific headings to be considered. Fowler stated that he had an unobstructed view to the west for a distance of some 1000 feet, and claimed that he looked in that direction before alighting from the grader, but observed no traffic approaching. We will now

proceed to a consideration of the specific questions raised and add additional pertinent facts thereunder.

I

Appellants first challenge the ruling of the trial court in permitting a police officer to describe a tire mark made by an automobile at or near the point of collision. The rule respecting the admissibility, *vel non*, of such marks has been set forth in a long line of Maryland cases. These cases, for the main part, are collected and considered in *Williams v. Graff*, 194 Md. 516 and *Miller v. Graff*, 196 Md. 609. The rule, for the purposes of this case, may be stated thus: Positive and certain identification of tire marks on a roadway as having been made by a particular vehicle is not necessary in order to render evidence thereof admissible. However, such evidence should not be admitted unless there is a sufficient showing, either from the time of the observation, from the relative locations of the marks and the car, or from other convincing facts, to support a reasonable inference that the marks had, in reality, been made by the vehicle involved in the accident. Testimony of a witness relative to such tire marks is not rendered inadmissible by the removal of the vehicle prior to the arrival of the witness. *Williams v. Graff, supra,* and cases cited therein. And testimony regarding such marks is particularly relevant on the issue of whether a driver was proceeding to the left of the center of the highway. *Williams v. Graff, supra;* Anno: 23 ALR 2d 112, 127.

Applying the rule as above stated, the trial judge was correct, we think, in admitting the police officer's testimony. The plaintiff Fowler contended he was struck when he was on the north side of the center line of the highway, which would have placed Smith's truck on his (Smith's) wrong side of the roadway. He claimed that the operator of the grader pulled off the road onto the shoulder and stopped. He alighted from the grader and could see to his left for a distance of about 1000 feet, and he looked, but saw no traffic coming. After talking momentarily with the operator, he started, without again looking to the west, to cross to the south side of the road, but was struck almost immediately.

Smith testified that he was traveling east on Middletown Road at about 30 miles per hour in his right lane of traffic, and, as he was about to pass the grader headed (or traveling) in the opposite direction, Fowler, without warning, jumped from the grader into the path of his truck. The grader was on the roadway and not on the shoulder. He applied his brakes, but was unable to avoid striking Fowler. He skidded "a little," and when he came to a stop in the west-bound lane, Fowler was behind his truck sitting just about in the center of the road. The truck was moved in order to summons assistance, but Fowler was not moved until the police officer arrived.

A Mr. Lee, project engineer of the State Roads Commission, testified that he was traveling in another motor vehicle just behind, and in the same direction as, the grader. The grader was 8 feet wide and was proceeding on the macadam part of the highway; not on the shoulder. Shortly before the time of the collision, he pulled over on the shoulder and passed the grader, which was going about 5 miles per hour, on its right side. Fowler was still on the grader. Lee had passed it "possibly 25 to 30 feet" when he heard a "commotion" which was the collision of the truck with Fowler. He immediately went back and saw Fowler sitting "in the vicinity of the center of the road."

The police officer arrived at the scene of the accident about 25 minutes after its occurrence. Fowler was "right in the center of the road," which was 21 feet in width, without a painted center line. The officer had been on the force some ten years, and had investigated quite a number of accidents; more when he first went on the force than in recent years. He saw a fresh skid mark beginning about 20 to 25 feet west of Fowler in the east-bound (south) traffic lane. The mark was 42 feet in length and, as just stated, was in the east-bound traffic lane.

We think the above testimony was sufficient to support a reasonable inference (if the jury chose to draw the same) that the fresh tire mark located at, or in such close proximity to, the point of collision was made by Smith's truck; consequently, the testimony was properly admitted.

## II

The trial court instructed the jury that there was "no legally

sufficient evidence in the case upon which a proper verdict could be based to show that the speed of the motor vehicle which Mr. Smith was driving contributed to or caused in any way the happening of the accident." This, of course, was a directed verdict in favor of the defendant on the issue of speed.[1]

At this point, it seems desirable to say that the real issue in the case, when tried, was whether the collision occurred to the north of the center of the highway as claimed by the plaintiff or to the south thereof as claimed by the defendant. This issue was squarely presented to the jury; the issue of the speed was not seriously pressed and little testimony was offered with reference thereto. It seems somewhat of an afterthought.

The evidence showed that the official road signs on the highway involved disclosed a speed of 50 miles per hour to be reasonable and proper as a prima facie proposition. Code (1957), Article 66½, § 211 (d). The plaintiff offered no original evidence as to the posted speed signs on the Road. On cross examination, when asked if the Road had been opened to traffic, he replied: "Yes, sir. We had signs placed, construction, 15 mile speed limit." This was not followed up by any proof as to where such signs had been located, by what authority, if any, they had been placed, or if any of them were located where the defendant would or could have seen them. (The investigating officer did not recall seeing any such signs, and the defendant flatly denied that he saw any.) The imposition of the maximum speed limits upon the highways of this State is a function of the Legislature and the authorities lawfully designated by it to set such limits. Cf. Code (1957), Article 66½, §§ 186, 211. Under these circumstances, the testimony in regard to "15 mile speed limit" signs had no evidential value whatever. Cf. *Schutz, Jr. v. Breeback,* 228 Md. 179; *State v. Marvil Package Co.,* 202 Md. 592.

The only other evidence relative to defendant's speed offered

---

1. Plaintiff's own testimony discloses a very high probability that the jury found that he was, at least, guilty of contributory negligence. If they did so find and the case had been submitted to them, under Maryland Rule 560, for the return of special verdicts, all questions of defendant's primary negligence would have been resolved, and much time and expense saved.

by the plaintiffs was that of a witness by the name of Krout, whose testimony, although referred to in appellants' brief, was not included in their record extract. (It was supplied by the defendant.) Krout was an employee of the construction company working in Fowler's crew. He was working off the south side of the Road about 300 feet east of the accident scene. He first saw Smith's truck approaching from the west when it was about 600 feet from him. It was "going right along at a good speed." (Negligence resulting from allegedly excessive speed may not be inferred from general adjectival descriptions. *Jones v. Baltimore Transit Co.*, 211 Md. 423.) Then, after testifying that he drove an automobile, he stated that Smith was going approximately "forty, forty-five." The above was all the evidence relative to Smith's speed offered by the appellants. In ruling upon the propriety of the court's ruling, Smith's testimony that he was traveling at 30 miles per hour and the testimony relative to the skid mark must be added for whatever help they may render appellants' cause.

It will not be necessary to make an extended elaboration upon the principles of law involved in our determination of the question under consideration. They have been stated and repeated so frequently that a brief outline of them will suffice.

Negligence is a relative term and must be decided upon the facts of each particular case. Ordinarily it is a question of fact to be determined by the jury, and before it can be determined as a matter of law that one has not been guilty of negligence, the truth of all the credible evidence tending to sustain the claim of negligence must be assumed and all favorable inferences of fact fairly deducible therefrom tending to establish negligence drawn. *Kantor v. Ash*, 215 Md. 285. Cf. *Suman v. Hoffman*, 221 Md. 302. And Maryland has gone almost as far as any jurisdiction that we know of in holding that meager evidence of negligence is sufficient to carry the case to the jury. The rule has been stated as requiring submission if there be any evidence, however slight, *legally sufficient* as tending to prove negligence, and the weight and value of such evidence will be left to the jury. *Ford v. Bradford*, 213 Md. 534. Cf. *Bernardi v. Roedel*, 225 Md. 17, 21. However, the rule as above stated does not mean, as is illustrated by the adjudicated cases,

that all cases where questions of alleged negligence are involved must be submitted to a jury. The words "legally sufficient" have significance. They mean that a party who has the burden of proving another party guilty of negligence, cannot sustain this burden by offering a mere scintilla of evidence, amounting to no more than surmise, possibility, or conjecture that such other party has been guilty of negligence, but such evidence must be of legal probative force and evidential value. *State v. Hopkins,* 173 Md. 321, and cases cited; *Hevell v. Balto. Transit Co.,* 173 Md. 327; *Haddock v. Stewart,* 232 Md. 139. Cf. *Commissioners, etc. v. Clark,* 94 U. S. 278 (not a negligence case). The rule, stated in slightly different terms, is that where the facts are undisputed, or the facts most favorable to the party carrying the burden of establishing another party's negligence are assumed to be true and all favorable inferences, fairly deducible therefrom, are drawn in favor of the burden-carrying party, and such undisputed facts (or the said favorable facts and inferences) lead to conclusions from which reasonable minds could not differ, then the question of negligence, *vel non,* becomes a question of law. *Bernardi v. Roedel; Suman v. Hoffman; Kantor v. Ash,* all *supra.*

We think the trial judge properly ruled on the issue of the speed of defendant's vehicle as a matter of law. Plaintiffs concede that § 211, *supra,* authorized, ordinarily, a speed of 50 miles per hour at the location of the accident, but state that said Section also provides that no person shall operate a motor vehicle on a highway at a greater rate of speed than "is reasonable and prudent under the conditions then existing," and argue that the evidence adduced was sufficient to require the jury to pass upon whether defendant's speed was reasonable and prudent under the circumstances. The argument is unpersuasive.

Section 211 also provides that "where no special hazard exists the following speeds shall be lawful * * *," and, as previously stated, names 50 miles as the lawful speed at the location of the accident, in the absence of such special hazards.

At this point, we analyze, briefly, the evidence relative to Smith's speed. The testimony of Krout was extremely flimsy and lacking in probative force (even assuming his estimate of "forty, forty-five" would establish imprudent speed). The bald

estimate of a man, with no special qualifications for estimating the speed of motor vehicles, who momentarily notices, from a distance of 600 feet, a vehicle approaching and acknowledges that he did not continue to observe the vehicle to the place of the accident, certainly cannot be considered as having any substantial evidentiary value. In fact, we think that it is so lacking in convincing probability that it amounts to no more than a scintilla of evidence. We have previously expressed our opinion as to the allegedly posted signs. The 42 foot tire or skid mark was offered by the appellee for whatever probative value it might have to show he was south of the center of the road at the time of the accident. Appellants offered no evidence to establish the probable speed of Smith's truck assuming that it made the mark. It was not of sufficient length, by itself, to establish imprudent speed; hence, any conclusion reached by the jury as to speed based upon such mark, alone, would be founded upon pure conjecture. Cf. *Mason v. Triplett,* 217 Md. 433, 439; *Schutz, Jr. v. Breeback, supra.* Smith, as stated above, testified he was traveling at a speed of 30 miles per hour.

It will be noted that the accident occurred early on a June morning. The atmosphere was clear, and it was not shown that rain had fallen so as to render the roadway slippery. The roadway was almost straight and visibility good. No congested traffic situation was shown to be present. Without going further into detail, no "special hazard" was shown to exist on the Road at the time of collision. Unless such special hazard was shown to exist, Section 211 specifically provided that 50 miles per hour was a lawful speed at the accident scene. We hold that the evidence allegedly establishing Smith's speed to have been unreasonable and imprudent amounted, at the most, to no more than a fleeting scintilla of evidence in that direction, and that reasonable minds could not have differed in reaching the conclusion that his speed was reasonable and prudent under the circumstances; hence the trial court's ruling was correct.

In addition to what we have said above, it is well-established law that the mere violation of a statute will not support an action for damages, unless there is legally sufficient evidence to show that the violation was a proximate cause of the injury complained of. *Austin v. Buettner,* 211 Md. 61. In the case at

bar, if we accept either Smith's or Fowler's view of how the accident occurred, the speed of Smith's truck was not a proximate cause of Fowler's injuries. If Fowler jumped off the grader right in front of Smith's truck (Smith's version), Smith's speed did not cause, or contribute to Fowler's injuries; the proximate cause thereof was Fowler's negligence. If Smith's truck came nearly to the north side of the Road and struck Fowler while he was in the act of taking his first step to cross to the south side of the Road (Fowler's version), again Smith's speed would not have been a proximate cause of the injuries, although Smith's failure to keep to the right of the center of the roadway would have been a proximate cause thereof. Cf. *Jones v. Baltimore Transit Co., supra; Sun Cab Company, Inc. v. Cusick,* 209 Md. 354; *State v. Marvil Package Co.,* 202 Md. 592, 600; *Sun Cab Co. v. Faulkner,* 163 Md. 477. Under either version, there is not the slightest indication in the evidence that a reduced speed on Smith's part would have averted the collision.

What we have said above makes unnecessary to determine the question as to whether Smith was acting as his wife's agent at the time of the accident.

*Judgment affirmed; appellants to pay the costs.*