STEPHEN R. MAZER, a Minor, etc., ET AL. *v.*
MILLARD W. STEDDING

[No. 256, September Term, 1970.]

*Decided December 7, 1970.*

506

The cause was argued before ORTH, THOMPSON, and MOYLAN, JJ.

*Bayard Z. Hochberg* for appellants.

*John B. Howard,* with whom was *Daniel O'C. Tracey* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The established general rule is that questions of primary and contributory negligence are for the jury. But there is a qualification as well known as the general rule. Particular facts may establish that a defendant has been guilty of negligence or a plaintiff has been guilty of contributory negligence as a matter of law. *Southern Maryland Electric Cooperative Inc. v. Blanchard,* 239 Md. 481, 485. The burden of proving negligence is upon the plaintiff and the burden of proving contributory negligence is upon the defendant. Before it can be determined as a matter of law that one has not been guilty of negligence, the truth of all the credible evidence tending to sustain the claim of negligence must be assumed and all favorable inferences of fact fairly deducible therefrom tending to establish negligence drawn. "And Maryland has gone almost as far as any jurisdiction that we know of in holding that meager evidence of negligence is sufficient to carry the case to the jury. The rule has been stated as requiring submission if there be any evidence, however slight, *legally sufficient* as tending to prove negligence, and the weight and value of such evidence will be left to the jury. * * * However, the rule as above stated does not mean, as is illustrated by the adjudicated cases, that all cases where questions of alleged negligence are involved must be submitted to a jury. The words 'legally sufficient' have

significance. They mean that a party who has the burden of proving another party guilty of negligence, cannot sustain this burden by offering a mere scintilla of evidence, amounting to no more than surmise, possibility, or conjecture that such other party has been guilty of negligence, but such evidence must be of legal probative force and evidential value. * * * The rule, stated in slightly different terms, is that where the facts are undisputed, or the facts most favorable to the party carrying the burden of establishing another party's negligence are assumed to be true and all favorable inferences, fairly deducible therefrom are drawn in favor of the burden-carrying party, and such undisputed facts [or the said favorable facts and inferences] lead to conclusions from which reasonable minds could not differ, then the question of negligence, *vel non,* becomes a question of law." *Fowler v. Smith,* 240 Md. 240, 246-247 (citations omitted). Thus a trial court's finding that a plaintiff was guilty of contributory negligence would be proper if there is in the evidence a prominent and decisive act susceptible of but one interpretation in the determination of which ordinary minds would find it impossible to differ. *Raff v. Acme Markets,* 247 Md. 591, 600.[1] When the issue is presented to the trial court by a motion for a directed verdict, as is proper when a jury is the trier of fact, Maryland Rule 552, or by a motion to dimiss, as is proper when the court is the trier of fact, Rule 535, it is required to consider the evidence and all logical and reasonable inferences deducible therefrom in a light most favorable to the plaintiff. *Stoskin v. Prensky,* 256 Md. 707, 709; *Yommer v. McKenzie,* 255 Md. 220, 223; *Trusty v. Wooden,* 251 Md. 294, 295; *Finneran v. Wood,* 249 Md. 643. But the evidence must be so considered in the light of the sound and widely recognized proposition that a person of ordinary intelligence, with unimpaired eyesight, who says that he did not see an object which, had he used his senses, he, in the nature of things, must have seen, is not to be cred-

---

1. For discussion of contributory negligence *per se* see *Texas Co. v. Wash., B. & A. R. Co.,* 147 Md. 167, 175.

ited. *So. Md. Electric v. Blanchard*, 239 Md. 481, 485, citing *Fulton Building Co. v. Stichel*, 135 Md. 542.[2]

The case before us was an action in tort brought by Stephen R. Mazer, a minor, by his parents and next friends, Allen Mazer et ux., and Allen Mazer et ux. in their own right (appellants) in the Circuit Court for Baltimore County against Millard W. Stedding (appellee) for damages for personal injuries and losses caused by appellee's negligence. The case went to trial before a jury and at the close of all the evidence the court granted a motion made by appellee for a directed verdict on the ground that appellants had been guilty of contributory negligence. Judgment was entered in favor of appellee for costs. Appellants' sole contention on appeal is that the lower court erred in directing the verdict.

The evidence most favorable to appellants was that Stephen R. Mazer (Mazer) while driving his father's car to school about 7:45 A.M. on a clear day in September 1967 collided with the blade of a grader. The grader had been parked three or four days before by appellee for his convenience about one and a half blocks from Mazer's home, facing west on the south side of Willow Glen Drive, a street in a new development in Baltimore County. Directly behind the grader was " a lowboy tilt trailer with a caterpillar bulldozer on it." This rig was attached to a flatbed truck with a loader on it. They had also been

---

2. The Court said in *Fulton Building Co.* at 549:

"* * * according to the principles announced by the authorities in this State, as well as elsewhere, as there is nothing to show that his sight is impaired, or he was not a man of ordinary intelligence, he cannot avoid the effect of his contributory negligence by saying he did not see an object which, if he had used his senses, he in the nature of things must have seen, and he cannot be credited when he says he did not see it."

The proposition was stated in *Sears v. B. and O. Railroad*, 219 Md. 118, 123, as follows:

"While it is true that the burden of proving contributory negligence is upon the defendant and the weight and credibility of conflicting evidence of the opposite parties is a jury question, nevertheless, consideration of the legal sufficiency of the evidence requires that we take account of the oft-repeated truism that if a witness says he looked and did not see when if he had looked he must have seen, such testimony is unworthy of consideration."

parked by appellee. The grader was a "W-C Speed Control, approximately 14 feet, weight approximately 3 tons, height approximately 6 feet, blade was a standard road grader blade, approximately 10 feet in length at right angles to the machine and when angled, it was much less. Width approximately 12-14 inches and weight approximately 300 pounds." The grader was about 6 feet 6 inches wide at the rear wheels and a little over 5 feet wide at the smaller front wheels. When the blade was at right angles it extended 20 to 25 inches beyond the right wheels. Mazer described the street as "kind of in a condition of disarray. There was dirt all over the street where construction work was being done and across from where we lived the curbing hadn't been put in as yet and, well, it was terrible." Where the equipment was parked houses were under construction on the north side of the street. There were no houses on the south side. As he drove east on Willow Glen Drive he was keeping well to his side of the road. He saw the grader about a half block away. He was going about 20-25 miles an hour. "When I approached the machine, naturally I veered on an angle to avoid hitting the machine. And I was looking straight ahead generally. Naturally I had to look some to the left to avoid hitting, to watch out for the cars that were on my side. * * * Well, I just moved enough to clear the machine and I'd say it was approximately two feet from the machine or more. I had to—it was kind of narrow and I was just maneuvering to just clear the machine, while I was watching for the cars that were on my left side so I wouldn't get too close." The right front wheel of the automobile hit the right end of the blade on the grader and forced the automobile into the machine. He did not see the blade until after the collision. "It ran straight through underneath. The scraper end was sticking out, protruding out. And it was concave toward the direction that I was coming from. * * * It was at a right angle to the machine. * * * It was covered with dirt and matched the appearance of the background, the same appearance of the roadway. It sort of blended in with the background."

He did not see it because "of the color and size and its position. It was down low and it was not easily distinguishable from the background. It was the color of the dirt. It was the color of the street." The sun was overhead. He asserted that the sun had no effect on his vision or his view of the machine. "I had no trouble seeing the machine." Although it was bright it was "[n]ot enough to affect vision." Where the grader was parked the street was 22 feet wide. Automobiles were parked on the north side of the street immediately opposite the equipment. There was evidence which was not refuted that the grader was parked tight against the curb. Mazer was required to wear glasses when driving a car—his operator's license had "restrictions for wearing glasses"—and he had them on at the time of the accident.

Appellants do not claim that there was not sufficient clearance at the time of the accident for an automobile proceeding east on Willow Glen Drive to pass between the grader parked on the south side of the street and the automobiles parked on the north side. On the contrary a Wilmer H. Smith testified that shortly before the accident, about 7:15 A.M., he had driven a paint truck east on Willow Glen Drive and passed the grader without a mishap. There was no evidence tending to show that the accident was caused by any mechanical failure in the Mazer car, and it is patent that Mazer did not drive the car into the scraper blade on purpose. Since the collision was unintentional the rational inference is that it was caused in one of two ways. Either Mazer saw the scraper blade protruding into the street from the grader and miscalculated the distance to clear it as he passed it, in which event he would certainly have been guilty of contributory negligence, or, he did not see the scraper blade extending from the side of the machine. It may have been that he did not see the blade because he did not look, in which case he would have been guilty of contributory negligence in the circumstances. But he said he looked and we assume for the purposes of this opinion that he did.[3] The

3. It appears from his own testimony as summarized supra,

question then is whether his claim that he did not see the blade is to be credited. The implicit finding of the lower court was that he must have seen the blade. We agree. He had unimpaired vision as corrected by the spectacles he was wearing and from the record appeared to be a person of ordinary intelligence. In such circumstances his statement that he did not see an object which, had he used his senses, he, in the nature of things, must have seen, is not to be credited. Therefore the collision of the car and the blade was due to his operating the car without due care thus contributing to the negligence which was the cause of the accident.

We find as a matter of law that he must have seen the blade because we believe that reasonable minds, considering the evidence most favorable to appellants, would not differ in reaching that conclusion. The day was clear and bright. The sun did not affect Mazer's vision. He saw the 3 ton, 6 feet high, 14 foot long grader when he was a half a block from it. It was facing him, so as he approached it, it was about 1½ feet narrower in the front than at the rear, it being a little more than 5 feet wide at the front wheels and about 6 feet 6 inches wide at the larger rear wheels. The 300 pound scraper blade was protruding into the street about 2 feet beyond the wheels. Its bottom edge was about an inch above the road. Its upper edge was about 12 to 14 inches above the road. The space through which Mazer had to maneuver his car was, as he said, narrow; it was the space left on a 22 foot road between automobiles parked on the one side and the Stedding equipment parked on the other side. With his attention centered on this narrow space through which he had to drive his car, he must have seen an object 14-15 inches high protruding from the side of the grader into that

---

however, that his attention was directed to the cars parked on his left as he passed the grader. "I was looking straight ahead generally. Naturally I had to look some to the left to avoid hitting, to watch out for the cars that were on my side * * * I was just maneuvering to just clear the machine, while I was watching for the cars that were on my left side so I wouldn't get too close." And it seems from the comments of the lower court in granting the motion for a directed verdict that it believed he looked.

space. We observe from photographs of the grader introduced in evidence by appellants, that when it is seen head on, as it was when Mazer approached it, virtually the entire 10 foot length of the scraper blade is clearly visible, hanging beneath the middle of the machine, its lower edge near the ground, and extending out on either side of the body of the machine. The body of the machine is considerably narrower than the width from right wheel to left wheel so that the blade extends out a much greater distance from the frame of the machine than the two feet it protrudes beyond the wheels.[4] In the factual posture existent we think that in the nature of things Mazer must have seen the scraper blade had he used his senses, even though it had dirt on it and was the color of the road. We find *Miller v. Mayor and City Council of Baltimore,* 161 Md. 312 to be apposite. We cannot say that the rope in *Miller* was more in plain sight than the blade here.

We hold that the lower court did not err in granting appellee's motion for a directed verdict. We have no need to reach the question of primary negligence.

*Judgment affirmed; costs to be paid by appellants.*

---

4. It is not clear from the testimony whether the blade when at right angles extends 20-25 inches from the outside of the right rear wheel or the right front wheel. It seems from the photographs that it is from the right rear wheel. If so then it would extend more than 2 feet from the right front wheel since the width between the two front wheels is a little over 5 feet while the width between the two rear wheels is 6 feet 6 inches.