WILLIAM R. BUCHANAN, Administrator of the Estate of John Paul Jones, Deceased *v.* DARYLE H. GALLIHER, A Minor, ETC., ET AL., AND JOHN HENRY HARLESS, JR., ETC., ET AL.

[No. 238, September Term, 1970.]

*Decided January 28, 1971.*

84

The cause was argued before ORTH, THOMPSON, and POWERS, JJ.

*William E. Brannan* for appellant.

*Robert C. Verderaime* and *Lewis S. Nippard,* with whom was *Timothy E. Welsh* on the brief, for appellees.

POWERS, J., delivered the opinion of the Court.

Daryle H. Galliher and John Henry Harless, Jr. were injured and John Paul Jones was killed when a car driven by Jones at high speed was wrecked at Liberty Road and the Baltimore Beltway at about 2:00 A.M. on April 21, 1968. All were minors. Galliher and Harless sued William R. Buchanan, administrator of the estate of Jones, in separate suits in the Circuit Court for Baltimore County, each joined by his mother, asserting derivative claims.

After consolidation the cases were tried together. Judgments were entered for all plaintiffs. The defendant appealed and here asserts:

1. That the judge erred in granting directed verdicts for the plaintiffs.
2. That the judge erred in failing to grant directed verdicts for the defendant.

After fully reviewing the evidence, and applying the appropriate tests, we conclude that the questioned rulings were correct, and will affirm the judgments.

On April 20th, at a time which is not clear but not significant, Jones, driving a 1968 Chevrolet four door Caprice hardtop, picked up Harless and dropped him off at his home. Later that evening they met again at a poolroom and drive-in restaurant in Eldersburg. Galliher also met Jones there. Neither had known him before that day. There was no indication that any of them drank any alcoholic beverages. Galliher went with Jones and another boy from the drive-in to a girl's house, and back. Jones had the keys to the car, and said it was his father's. Back at the drive-in, it was arranged that Jones would take Harless and Galliher home, but had to stop first to get gas. They left there about 1:30 A.M., with Jones driving, Galliher on the front seat and Harless on the rear seat, lying down and apparently asleep. Jones drove normally, within the speed limit.

Officer Broadfoot, Baltimore County Police, observed the car on Liberty Road, at a normal rate of speed, "no

violation". It fitted the description of a car reported stolen, and he followed, "just as a normal check" and stopped it. The car pulled over to the shoulder. He went to the car and asked the operator for his license and registration card. At that time he saw Harless lying on the back seat. The driver made no move to comply, even after the request was repeated. The officer drew his gun. The car took off east on Liberty Road at high speed. In the chase that followed, both cars attained speeds over 100 miles per hour. The chase ended when Jones tried unsuccessfully to enter a ramp at the Beltway, hit the curb, left the roadway and wrecked.

Harless had no recollection of the occurrence. Galliher testified that when the police car signalled he told Jones to pull over. Jones said he wouldn't, because he had no driver's license, and the car was stolen. At Galliher's urging, he did.

The officer said he was at the side of the car about 45 seconds. Galliher thought the time was about 1½ to 2 minutes. Based on his observation there, and at the scene where he made efforts to resuscitate Jones, Officer Broadfoot estimated his age at 15 to 17. Officer Hoffmeister, from observation at the accident scene, estimated Jones was between 16 and 18. Another boy who had seen him several times that evening, but not before, thought he was 17 or 18, was about five feet eight or nine, and weighed about one hundred fifty to sixty. Officer Schultz, who took photographs at the scene, thought Jones was about 17 years old. Harless thought Jones was 18 or older. Galliher said he thought Jones was 17 or 18, about five feet eight or nine, and weighed about one forty five.

The only evidence offered by appellant was a photograph of Jones taken in January, 1968, and a copy of the autopsy report, which contained the statement, "The body appears to be the stated age of 14 years."

At the close of all the evidence, appellant moved for directed verdicts in his favor on the ground that plaintiffs, as a matter of law, were contributorily negligent, or assumed the risk. He did not contend that Jones, as a

matter of law, was free of primary negligence. Appellees moved for directed verdicts on the ground that the deceased driver was negligent as a matter of law, and that, as a matter of law, they were free of contributory negligence, and did not assume the risk of their injuries.

Negligence of the driver apparently was taken by all as too obvious for discussion. The motions thus presented to the trial judge three alternatives:

1. That as a matter of law Galliher and Harless were negligent, or assumed the risk of injury.
2. That as a matter of law, they were not negligent, and did not assume the risk of injury.
3. That there were conflicts in the evidence, or the inferences to be drawn, and their resolution was for the jury.

It was not contended that the passengers were in any way negligent in the direct operation of the vehicle, nor in what happened after Jones fled the place where the officer stopped him. The points urged were (a) the passengers should have known that Jones was unlicensed, and thus incompetent, and assumed the risk of riding with him, and (b) when the officer stopped the car, Galliher or Harless or both, then knowing that Jones was unlicensed, and the car stolen, should have foreseen what would occur, should have left the car to avoid the consequences, and were negligent in failing to do so.

When a trial court is called upon by a motion for a directed verdict to rule upon the legal sufficiency of the evidence to require submission of any issue to a jury, the court must assume the truth of all credible evidence on that issue and of all inferences fairly deducible therefrom, and consider them in the light most favorable to the party against whom the motion is made, and if such evidence and inferences lead to conclusions from which reasonable minds could not differ, then the issue is one of law for the court and not one of fact for the jury.

This rule applies with equal force, whether the motion is made by a plaintiff or by a defendant; whether the

moving party or the opposing party has the burden of proving the issue; and whether the motion goes to the opposing party's whole case, or is partial, or is a request for a peremptory instruction on the issue. The rule is illustrated and applied in *Smack v. Whitt,* 249 Md. 532, 536, 240 A. 2d 612 (1968) (whether the defendant was, as a matter. of law, free of negligence); *Pettaway v. Washington,* 255 Md. 202, 206-207, 257 A. 2d 214 (1969) (whether the defendant was, as a matter of law, negligent); *Fowler v. Smith,* 240 Md. 240, 246-247, 213 A. 2d 549 (1965) (peremptory instruction, or partial directed verdict, for defendant on issue of speed); *Rice v. Norris,* 249 Md. 563, 566-568, 241 A. 2d 411 (1968) (whether plaintiff was, as matter of law, free of negligence); *Stein v. Overlook Joint Venture,* 246 Md. 75, 82-83, 227 A. 2d 226 (1967) and *Mazer v. Stedding,* 10 Md. App. 505, 506-507, 511, 271 A. 2d 381 (1970) (whether plaintiff was, as a matter of law, negligent); *Chalmers v. Willis,* 247 Md. 379, 387, 231 A. 2d 70 (1967) (risk not, as a matter of law, assumed); *McClearn v. Southeast Concrete Co.,* 253 Md. 135, 140, 251 A. 2d 896 (1969) (as a matter of law, risk assumed); *Baltimore County v. State, use of Keenan,* 232 Md. 350, 366-367, 193 A. 2d 30 (1963) (risk not, as a matter of law, not assumed) and a myriad of other cases.

As quoted in *Chalmers v. Willis, supra,* and *Gibson v. Beaver,* 245 Md. 418, 421, 226 A. 2d 273 (1967):

> "When the plaintiff enters voluntarily into a relation or situation involving obvious danger, he may be taken to assume the risk, and to relieve the defendant of responsibility. Such implied assumption of risk requires knowledge and appreciation of the risk, and a voluntary choice to encounter it."

We find no evidence which could have permitted the jury to conclude that any risk in riding with Jones was comprehended by either appellee, or was so obvious that it should have been comprehended. Although Galliher, at

least, later learned that he was unlicensed, they did not know it, nor is there any evidence that would put them on notice to inquire, when they began their ride with him. In fact, the injuries were not proximately caused by any lack of driving competence by Jones, but by his flight to avoid apprehension. Up to that time, his driving was above reproach.

Nor do we find any evidence from which the jury could conclude that the appellees, or either of them, failed to use ordinary care when they stayed in the car when it was stopped by Officer Broadfoot, and at least one appellee had just learned that Jones had no license, and the car was stolen. Indeed, any attempt to leave the car in those few seconds could well have been mistaken by the officer as an indication of guilt. There is not a scintilla of evidence that either appellee any more than the officer, could have foreseen the driver's sudden flight.

*Judgments affirmed.*
*Appellant to pay costs.*