ROBERT BATTEN *v.* NICHOLAS MICHEL ET UX.

[No. 651, September Term, 1971.]

*Decided July 5, 1972.*

The cause was argued before ORTH, THOMPSON and MOYLAN, JJ.

*James K. Carmody,* with whom were *Serio, Hopper, Blumenthal & Carmody* on the brief, for appellant.

*Robert A. Dietz,* with whom were *Bertrand W. Nye, Jr.,* and *Dietz & Ebersberger* on the brief, for appellees.

THOMPSON, J., delivered the opinion of the Court.

Nicholas Michel and his wife, appellees, sued Robert Batten, appellant, for damages resulting from an automobile accident. The claims included damages for physical injuries to Mr. Michel and to his automobile and for injuries to the couple's marital relationship. At the conclusion of the case, the court reserved ruling on the plaintiffs' motions for a directed verdict and submitted the case to the jury. The jury decided that both parties were negligent and found for the defendant. Subsequent to the trial, a hearing was held on the plaintiffs' motions for judgments n.o.v. or in the alternative a new trial. Judge Ridgely P. Melvin, Jr. granted the motions and awarded a new trial solely on the issues of damages. At the subsequent trial the jury awarded plaintiffs a total of $10,-500.

At approximately 5:00 p.m. on February 23, 1967, appellee Michel left his office at the Naval Ship and Research Development Center. He went to his reserved parking space and entered his 1959 Volkswagen convertible preparatory to going home. It was Michel's intention to back his vehicle out of its angular head-in parking spot and proceed forward along the one-way west traffic lane of Clark Road. During the execution of this maneuver, he was struck in the rear by appellant's 1965 Corvette Stingray.

648

The situs of the accident is complicated and therefore will require considerable detail in its description. The area is surrounded by one, two and three story laboratory buildings, some of which approach paved driving surfaces but without borders or curbs. A sign with lettering perhaps two feet high painted on the side of one of the buildings directs "work safely today" and completes the impression that the situs is that of the physical plant of an industrial complex. Clark "Road" is approximately 70 feet wide, runs roughly east and west and separates two rows of laboratory buildings. The single eastbound and westbound lanes of Clark Road are in turn separated by head-in single vehicle parking spaces, each angled slightly to facilitate reception of a vehicle from its respective one-way route of traffic. From the northernmost ends of the painted lines demarcating the parking slots, a line perpendicular to the north curb of Clark would allow 17 feet of driving surface for westbound traffic.

Greenlee Road, (also spelled in the record "Greenly") is a 15 foot wide drive, providing southbound-only traffic access to Clark Road. At its intersection with Clark, Greenlee's west corner is more southerly than its east corner. Along the north edge of Clark there is a concrete curb followed by an open border; Greenlee has no curb, but west of its paved surface there is also a border. Beyond these borders, is a large laboratory building. A hypothetical southbound driver on Greenlee Road, some 50 feet from the intersection, ordinarily might be able to see a small portion of Clark Road west of the intersection, and perhaps even a portion of Michel's assigned parking space. However, at the time of the accident, a large trailer type storage van was parked on, and took up most of, the border between the western edge of Greenlee Road and the laboratory building. The position of this van, close to the corner, would obstruct the view west of the intersection of a driver approaching Clark on Greenlee. One so approaching could not see Michel's parking space until almost to the northernmost edge of Clark Road. Conversely, it was impossible from Michel's parking space to see "up" Greenlee Road.

The northernmost terminus of Greenlee Road served only a parking lot; one exiting such lot would proceed down Greenlee and could eventually arrive at the main gate. Michel testified that Clark Road was "traditionally" considered the main road; Greenlee, the exit road from the parking lot. On the road surface of Greenlee within view of its intersection with Clark was the word "S-L-O-W", painted in three foot yellow letters. There was testimony that the speed limit on Greenlee may or may not have been physically posted, but according to the administrative manual disseminated to employees at the various laboratories it was designated as 10 miles per hour.

Michel testified that after he entered his car, "I turned around physically . . . and looked out the back." He said that it was impossible to see "up" Greenlee but he could see the "entrance." I had moved back out of my parking space about 5 feet and I was in forward gear—I was shifting gears actually at the time, and looking into the rearview mirror." Michel later testified that at this point he was "at a standstill," that he "probably had my brake on very lightly, to prevent the car from moving while I was shifting . . . The best I can recall, I had the car in first gear and the clutch was in and I was preparing to move forward . . . I can't tell that closely whether I had started or whether I had the clutch in to make the contact . . . It's a matter of degree, when you are letting a clutch out, all of a sudden you start to move. I was at that point." Michel testified that from his position, the "entrance" of Greenlee was about 40 feet distant. "Just as I started shifting gears, I heard a loud roar behind me, . . . I was looking in the rearview mirror in response to the roar I heard . . . and I . . . [saw] Mr. Batten's car swing around the corner and before I could do anything, he struck me. . . . I just sat there. There was nothing I could do." He testified that he saw appellant the moment he came into view, and during the interval it took to traverse the 40 feet, he was able to estimate appellant's speed at 20 to 25 miles an hour, and

that "[appellant] did not slow down as he came into view."

Harold J. Kumer, an employee at the Naval Research and Development Laboratory, testified that he "heard the crash, and right away I looked." He did not see the actual impact and could not testify that he saw the appellant's vehicle before it got to the intersection. Asked if he recalled the angle of the Volkswagen with respect to the marked parking space he testified "he was adjacent to the space assigned him. He was—had not made a turn. It was sitting in the same relative angle position as he would if he was inching or going out of the parking area." Asked the angle of the Corvette after the collision Kumer testified "the Corvette had already completely made its turn, it was on the straight-of-way. I would say, on the straight-of-way." He testified that at the time of the accident the sun was shining very brightly and "it is a glaring blind spot," and that the sun would be in both drivers' eyes.

The appellant testified that at the time of the accident he was an engineer employed at the Naval Ship and Research Development Center. He said that at the time of impact he was traveling 7 to 10 miles an hour. Asked how he was sure of that, he testified "well, first off, I wouldn't go into that intersection very fast . . . [b]ecause there are pedestrians in it and there are always cars in it; even at the later time of day that it was, it was only fifteen minutes after work got out and heavy traffic had only been gone maybe five minutes prior to that." He testified that before arriving at the intersection with Clark Road he was traveling "maybe 10, 12 miles an hour." Because there was a slight downhill grade he braked but couldn't recall coming to a stop.[1] "I didn't see anything moving or anything that I would certainly have to watch out for . . . there was no car moving in the intersection at all." Asked if he noticed Michel's Volkswagen before he hit it, the appellant re-

---

1. There was no evidence, photographic, demonstrative or testimonial that in any way indicated that a stop sign was posted at this intersection.

plied, "I don't recall that. I don't recall seeing—noticing his car after—after I looked and checked again to see if there were any pedestrians." He had no chance to apply his brakes before the impact and if the impact moved the Volkswagen "it was very little." The appellant agreed that the sun was in his eyes when he went around the corner but that he had both of his sun visors down and "they cover the whole front." On cross-examination the following colloquy occurred:

> Q. "Would you say the reason you never saw Mr. Michel's car until after you hit it was because the sun was in your eyes?
> A. "I would say so. There was—
> Q. "Does that—and you proceeded ahead without being able to see where you were going with the sun in your eyes. (pause) Isn't this true?
> A. "No, sir. Because I had the visor down so the sun would not—I could see (loud coughing).
> Q. "Well, why didn't you see Mr. Michel's car before the accident then?
> A. "I guess that's the way. I don't know why I didn't see it.
> Q. "He was there, obviously.
> A. "Yes, sir."

There was evidence that Michel's Volkswagen was damaged all across the rear and that Batten's Corvette sustained damage to its right front fender and bumper. Photographs in evidence indicate the Volkswagen was completely out of the parking space at the time of impact.

The appellant argues that the action of the trial court ordering the judgment below vacated and awarding appellees a new trial solely on the issues of damages was erroneous because there was legally sufficient evidence of contributory negligence as to justify the submission of that issue to the jury. He accepts the finding that he was negligent.

The action of the trial court in reserving decision on plaintiffs' motion for a directed verdict and submitting the case to the jury became in effect a motion for a judgment n.o.v. Md. Rule 563 a 2. See *Morris v. Williams*, 258 Md. 625, 627, 267 A. 2d 148; *Burns v. Goynes*, 15 Md. App. 293. Contributory negligence is an affirmative defense and the burden of proving the plaintiff's contributory negligence rests upon the defendant. *Wheeler v. Katzoff*, 242 Md. 431, 219 A. 2d 250; *Abraham v. Moler*, 253 Md. 215, 252 A. 2d 68; *Mondawmin Corp. v. Kres*, 258 Md. 307, 266 A. 2d 8. Contributory negligence, if present, defeats recovery because it is a proximate cause of the accident; otherwise the negligence is not contributory. See *Baltimore Transit Company v. Sun Cab Company*, 210 Md. 555, 124 A. 2d 567, 571. We discussed the principle in *Mazer v. Stedding*, 10 Md. App. 505, 506, 271 A. 2d 381:

"Before it can be determined as a matter of law that one has not been guilty of negligence, the truth of all the credible evidence tending to sustain the claim of negligence must be assumed and all favorable inferences of fact fairly deducible therefrom tending to establish negligence drawn. 'And Maryland has gone almost as far as any jurisdiction that we know of in holding that meager evidence of negligence is sufficient to carry the case to the jury. The rule has been stated as requiring submission if there be any evidence, however slight, *legally sufficient* as tending to prove negligence, and the weight and value of such evidence will be left to the jury. * * * However, the rule as above stated does not mean, as is illustrated by the adjudicated cases, that all cases where questions of alleged negligence are involved must be submitted to a jury. The words "legally sufficient" have significance. They mean that a party who has the burden of proving another party guilty of negligence, cannot sustain this burden by of-

fering a mere scintilla of evidence, amounting to no more than surmise, possibility, or conjecture that such other party has been guilty of negligence, but such evidence must be of legal probative force and evidential value. * * * The rule, stated in slightly different terms, is that where the facts are undisputed, or the facts most favorable to the party carrying the burden of establishing another party's negligence are assumed to be true and all favorable inferences, fairly deducible therefrom, are drawn in favor of the burden-carrying party, and such undisputed facts [or the said favorable facts and inferences] lead to conclusions from which reasonable minds could not differ, then the question of negligence, *vel non*, becomes a question of law.' Fowler v. Smith, 240 Md. 240, 246-247, 213 A. 2d 549, 554 (citations omitted)."

The decision of a jury must always be based upon the evidence before it; it must not be allowed to merely speculate. *Plitt v. Greenberg*, 242 Md. 359, 367, 219 A. 2d 237, 243. And where the defendant produces no evidence disclosing negligence on the part of the plaintiff and the plaintiff's evidence discloses no such evidence, the court should either instruct the jury that as a matter of law the plaintiff was not guilty of contributory negligence, or not instruct it at all as to such negligence. *Wheeler v. Katzoff, supra.* Unless there be some evidence of negligence of the plaintiff contributing to the happening of the accident beyond a mere scintilla, or evidence from which negligence may be legally inferred by reasonable persons, there is nothing which justifies the submission of the plaintiff's negligence to the jury. *Gutterman v. Biggs*, 249 Md. 421, 240 A. 2d 260; see *Rice v. Norris*, 249 Md. 563, 566, 241 A. 2d 411.

The appellant contends specifically Michel did not maintain a proper lookout as he backed from his parking space and that he failed to make sure this maneuver could be made with reasonable safety. He says fair and

permissible inferences to support his position could be drawn from the following: (1) the testimony of Dr. Bohlman, the treating physician; (2) the relative positions of the vehicles following the accident; and (3) the physical evidence of the impact.

### Testimony of Treating Physician

By stipulation of the parties, the record contains only that testimony of Dr. Bohlman in which he recited, apparently from notes made during treatment, the history given him by Nicholas Michel. The doctor testified, "He stated that while backing out of a parking place in his VW, his car was struck in the rear by a Corvette Stingray which jarred him . . . And he states that the car was too badly damaged to be driven away. He thinks he was looking forward when the impact occurred."

Appellant extracts from this testimony the phrase "while backing" and assigns to it the affirmative implication Michel was looking forward as his vehicle was in fact being driven backward, i.e. that the aforementioned phrase of the treating physician constituted either an admission or a declaration against interest. We think appellant reads too much into the phrase. It is clear from the record that this choice of phraseology, used at the very beginning of the doctor's statement of medical history, was a generic phrase, a prefatory remark, and in the absence of any explanatory testimony, is not inconsistent with Michel's testimony that he had completed his backing maneuver when appellant entered the intersection. The statement "he thinks he was looking forward when the impact occurred" is entirely consistent with Michel's testimony that just before impact he had been shifting into first gear when the "roar" of appellant's approach directed his attention to his rearview mirror.

### Position of Vehicles

Photographs taken immediately after the accident show clearly the Volkswagen had backed completely out of

its parking space and onto the roadway at the time of impact. This fact does not support the appellant's argument. On the contrary it tends to show Michel was either stopped or moving forward at the moment of impact.

## Physical Evidence

Appellant alleges that despite Michel's testimony he was stopped at the time of impact, there were physical facts in evidence from which the jury could have rejected this testimony and found that the Volkswagen was in reverse gear and moving backward at the time of impact. Michel described the severity of the impact as being "terrific." His tight fitting hat flew off his head and parts of the car "flew all around." The violence of the impact caused him to lose "feel of motion" but he guessed that the impact moved his vehicle some 2 to 4 feet forward. He said that at the moment of impact he was at a standstill but was shifting gears and that he "probably had [his] brake on very lightly, to prevent the car from moving while [he] was shifting." The appellant's car "bashed in the lid of my engine compartment so that it went up against the engine and there was a terrific noise of the rotating pulleys and everything and that was it." His automobile had to be towed away and was subsequently repaired at a cost of $202.00.

On cross-examination Michel was asked "Had your brake been on, wouldn't there have been some skid marks left by your Volkswagen tires? A. Only if I had my foot jammed hard against the brakes. Q. So then, actually, the effect of the brake wouldn't have impeded the forward motion of your little tiny Volkswagen as it got hit in the rear by this terrible impact? A. That is correct." On redirect examination he testified that his foot was "lightly" on the brake and that it did "to some extent" impede his forward movement.

The appellant testified that his Corvette weighed 3,500 to 4,000 pounds and he estimated the weight of the Volkswagen convertible as "more like 2,500 pounds." He testi-

fied that the right front fender that was damaged in the accident was made of fiberglass and that that material "has an impact resistance, but beyond that point it shatters"; the force necessary to shatter the fender would be minimal and the impact of this accident did not shatter the fender. Although the damage was not so severe as to require a replacement of the fender, he had received an estimate of damages in the amount of $336.00. After impact his car did not "bounce back" but stopped immediately and that if he moved the Volkswagen it "was very little . . . maybe [two feet]."

The appellant argues that the slight forward movement of Michel's automobile could well be accounted for and "perhaps only accounted for" by the fact that the vehicle was in reverse gear and moving backward at the time of impact. While this might be a possible inference, the appellant overlooks the rule of law that the jury will not be permitted to infer from mere possibilities the existence of facts. *Plitt v. Greenberg, supra.* It is equally possible the estimates of speed were too high, or that the Volkswagen, although stopped, was still in reverse gear, or both. There was testimony that Michel's brakes and the clutch were engaged to some extent and these would have, of course, also deterred forward movement.

The evidence produced does not disclose any negligent act or omission on the part of Michel from which a rational mind could draw an inference of negligence. At best a mere scintilla of evidence of negligence has been produced; such is not of legal probative force and is not legally sufficient to allow the issue to go to the jury; the issue of contributory negligence became one of law for the court and not one of fact for the jury. *Mazer, supra; Buchanan v. Galliher and Harless,* 11 Md. App. 83, 272 A. 2d 814. See also *Wiggins v. State to Use of Collins,* 232 Md. 228, 237, 192 A. 2d 515, 520-521. This being so, the trial court properly granted appellees judgments n.o.v. on the issue of contributory negligence and a new trial on the issues of damages.

It appears from the record that Michel's total contribu-

tion to the happening of the accident was that of being there at the moment. *Brooks v. Fairman*, 253 Md. 471, 252 A. 2d 865; *Sun Cab Company v. Faulkner*, 163 Md. 477, 163 A. 194. Even if he had been backing without looking, the record is clear there was nothing he could have done to avoid the accident after the appellant's vehicle came around the corner or after the "roar" called that vehicle to his attention. Thus his negligence, if it existed, could not be the proximate cause of the accident. *Sun Cab Company v. Faulkner, supra.*

*Judgments affirmed.*
*Appellant to pay the costs.*