## RUSSELL U. NEFF ET AL. *v.* RALPH D. PRYOR PLUMBING AND HEATING, INC.

[No. 830, September Term, 1975.]

*Decided June 28, 1976.*

The cause was argued before MOORE, MELVIN and MASON, JJ.

*Charles E. Wilson, Jr.,* with whom were *McCarthy & Wharton* on the brief, for appellants.

*John P. Corderman,* with whom were *Meyers, Wagaman, Corderman & Young, P.A.* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

In this case a husband and wife sought damages for the destruction of their home, and its contents, by a fire alleged to have been caused by the negligence of a plumber in the use of a blowtorch. (Their insurer also joined in the action.) Upon a submission of issues, the jury found actionable negligence on the part of the plumber but it also found that the husband was contributorily negligent. On this appeal a single issue is presented, namely, was there sufficient evidence to justify the grant of an instruction on the issue of contributory negligence on the part of the husband? We find that there was.

I

In early 1972, the appellants, Russell U. Neff and his wife, Eva, decided to enlarge their summer cottage located on Antietam Creek below Funkstown in Washington County, and to make it their year-round residence. Mr. Neff was himself a builder and at the time of trial in May, 1975 had been constructing houses for some 21 years. He and his employees were to perform most of the renovations — the addition of bedrooms, enlargement of living areas and installation of a first floor bathroom. The electrical and plumbing work, however, was to be subcontracted. The plumbing subcontractor was the appellee, Ralph D. Pryor Plumbing and Heating, Inc. The plumbing work to be performed was in connection with the conversion of a first floor closet to a full-size bathroom and this in turn involved the extension of water pipes from an existing second floor bath located directly above the closet. Appellee's employee on the job was Rondell Harshman who had done plumbing work on Mr. Neff's construction jobs for some 7 or 8 years.

Harshman was making pipe connections on March 28 and 29, 1972. On those days Mr. Neff himself was working elsewhere but came by to open the house in the morning and lock it at night.

Toward the end of his own workday of March 29, 1972, Mr. Neff went to the cottage shortly after 4 p.m. and Harshman was still working. Neff testified that he was "soldering the hot and cold water lines in the bathroom downstairs and I saw him solder them in . . . and I was with him maybe 20 to 30 minutes." Questioned further on direct examination concerning the manner in which Harshman soldered the connections, Mr. Neff responded:

> "A. The first thing he soldered was a pipe right under the ceiling against the paneling, which those pipes I wanted kept close to the wall and he had them against the paneling, I would say about an inch and when he soldered the top joint, he hit the paneling with the flame, and there was a black spot about the size of your hand showed up and when he did that, I don't know whether he said 'oops' or 'oh' or something like *and I said, 'Well, I'll replace that piece of paneling'* and then he went down below and he sweated two joints there and he did the same thing down there and he scorched, I would say, two places, the size of your hand." (Emphasis added.)

Concerning his observations as to how Mr. Harshman "actually used the torch" Mr. Neff further testified on direct examination:

> "A. Well, I seen him use the torch toward the paneling; I seen them use a shield just like an ordinary carpenter's saw to protect areas from the flame, I have seen them use that, when they didn't want to throw flame against a wall that was even painted, they use a shield like that, *but he didn't use any shield and the flame went right into the paneling.*"

On cross-examination, Mr. Neff was asked his reaction to the scorching of the paneling. Counsel for the appellee inquired:

"Q. And did you make a complaint to him at that time?
A. He sort of said 'oops' or something like that after he took the torch off and I said that I would just replace that panel.
Q. Was that piece of paneling smoking?
A. Yes it smoked for a while and then it went out."

\* \* \*

"Q. Now, did that cause you any concern?
A. Only after he scorched the first time, it did spread just a little bit.
Q. You didn't ask him to use a shield or anything?
A. No, I didn't."

After Harshman completed his work, Neff and he left the premises together. The following morning at approximately 7:00 a.m., Mr. Neff unlocked the door and then went to another job. In the early afternoon of March 30, some 19 hours after the completion of the soldering work by Mr. Harshman, smoke and flames were observed coming from the cottage, by Neff and his employees. They hurried to the scene and endeavored to extinguish the blaze. The fire was eventually brought under control by the local fire department. The house and its contents were severely damaged.

The Neffs[1] sued Pryor Plumbing and Heating in negligence on the theory that the overheating of the paneling caused the paper backing of the fiberglass insulation behind it to smolder and that this process continued for many hours until a blaze occurred. There was expert testimony on behalf

---

1. Erie Insurance Exchange, the Neffs' insurer, was a coplaintiff asserting a subrogation claim in the amount of $8,000. (The Neffs' separate claim was for $12,000.)

of the appellants that the fire originated in the area where Mr. Harshman had scorched the paneling and that there was no indication that the fire was of electrical origin. Expert testimony adduced on behalf of the appellee offered the conclusion that the fire was electrically caused.

In its general instructions to the jury the court advised that they were to return special verdicts — on a typewritten form submitted by the court — on the issues of primary negligence, contributory negligence and damages. With respect to the negligence issues, the court in its oral instruction stated:

> "If you find, and the answer is 'yes' to that first question, if you find that the defendant employee was negligent in performing this work, and the next question you have to answer is this: There is of course as a defense, there hasn't been much said about it, by inference, it is necessary, of course, for the Plaintiff to satisfy you that he was not guilty, himself, of contributory negligence, that is, that the Plaintiff, Mr. Neff, did not do something, that is, he was not negligent in causing or contributing to the happening of this incident. Now, the burden of proof, of course, in establishing negligence is on the Plaintiff, that is Mr. Neff, and the burden of proof in establishing contributory negligence is on the Defendant and that is Mr. Pryor."

Toward the conclusion of the instructions the court also paraphrased a written instruction with respect to contributory negligence previously submitted by appellee, and stated: ". . . Before the Plaintiff can recover he must establish that about at the time of the happening of the occurrence that the plaintiff was using reasonable care for the safety of his property and that the defendant's employee was guilty of legal carelessness or negligence . . . and that such negligence was the proximate cause of the fire. . . ." Appellants' counsel excepted to the instructions concerning contributory negligence "as the plaintiff had used reasonable care for the protection of his property, and I

don't think there is any evidence in this case that would entitle the jury to consider whether or not Mr. Neff was guilty of any negligence."

Appellants contend that it was error for the trial court to submit the issue of contributory negligence for determination by the jury.

## II

As Judge Hammond, later Chief Judge, observed for the Court of Appeals under similar circumstances in *Lindenberg v. Needles*, 203 Md. 8, 15, 97 A. 2d 901 (1953), the exception of the appellants to the court's charge on contributory negligence in this case was, in effect, a request for a directed verdict for the plaintiffs on the issue of contributory negligence. Maryland Rule 552.[2] The appellants (plaintiffs) would here be entitled to such a ruling only if there was no evidence from which a reasonable mind could find or infer that Mr. Neff had directly contributed to his own loss by acting as an ordinarily prudent man would not act under the circumstances. Furthermore, in determining whether there was evidence which required the jury to consider the issue of contributory negligence, the testimony must be viewed in the light most favorable to the defendant (appellee) on whom rested the burden of proving contributory negligence. *Lindenberg v. Needles, supra; Goldman v. Johnson Motor Lines, Inc.*, 192 Md. 24, 63 A. 2d 622 (1949).

Viewing the record by these standards, we cannot find error in the court's instruction to the jury. As the Court declared in *Lindenberg*:

"Contributory negligence, like primary negligence, is relative, and not absolute, and must be determined by the circumstances of each case. *Elzey v. Boston Metals Co.*, 189 Md. 566, 56 A. 2d 692; *Thursby v. O'Rourke*, 180 Md. 223, 23 A. 2d 656; *Yockel v. Gerstadt*, 154 Md. 188, 140 A. 40. The

---

**2.** Judge Hammond cited the predecessor Rule 4 (III, Rules of Practice and Procedure).

conduct of an actor during a sequence of events which culminate in injury is to be tested by comparison with what an ordinarily prudent man would have done or not done under like circumstances. *The relative significance of each of the events and of the conduct of the actor, as they occur, is most appropriately weighed by a jury, who, as ordinary men, must determine what was reasonably to be expected."* 203 Md. at 15-16. (Emphasis added.)

In the instant case, the appellants charged — and the jury found — primary negligence on the part of the appellee in the use by its employee of a torch, without a shield, while soldering the pipes. The appellant Neff, himself an experienced builder, was present when the negligent acts were performed. By his own testimony, he did not object to the use of the torch without a shield; nor did he complain. Indeed, he himself undertook to replace the scorched panel. The plumber, we note, was cross-examined concerning the scorching of the paneling and testified as follows:

> "Q. When you scorched the paneling, whether it was at the bottom or the top, did you do anything to make sure that the paneling wasn't burning? Did you put a wet rag on it?
>
> A. No sir.
>
> Q. Why not?
>
> A. A wet rag?
>
> Q. Yes.
>
> A. I probably felt it and Mr. Neff was there and he said 'That is okay'.
>
> Q. Meaning that it was alright that you had burned it?
>
> A. Yes sir."

Mr. Neff was obviously familiar with the properties and characteristics of the insulation material behind the wood paneling. Nevertheless, the record discloses no

precautionary action on his part at the time of the scorching nor even an inspection by him the following morning when he unlocked the house at 7 a.m. Certainly his background, experience and knowledge were matters properly to be considered as fact issues on the question whether he himself was contributorily negligent. *Cf. Bean v. Ross Mfg. Co.*, 344 S.W.2d 18, 24 (Mo. 1961).

It is beyond cavil that the submission of the issue of a plaintiff's alleged negligence is justified only where

> "there be some evidence of negligence of the plaintiff contributing to the happening of the accident beyond a mere scintilla, or evidence from which negligence may be legally inferred by reasonable persons. . . ." *Goldman v. Johnson Motor Lines, Inc.*, 192 Md. 24, 31, 63 A. 2d 622 (1949). *Accord, Gutterman v. Biggs*, 249 Md. 421, 240 A. 2d 260 (1968); *Baltimore Transit Co. v. State*, 184 Md. 250, 40 A. 2d 678 (1945); *Greer Transp. Co. v. Knight*, 157 Md. 528, 146 A. 851 (1929); *Batten v. Michel*, 15 Md. App. 646, 292 A. 2d 707 (1972).

We are satisfied that the record before us reflects more than a "mere scintilla" of evidence of negligence on the part of Mr. Neff. We are unable to agree that a jury could not properly find or infer negligence on his part. *See, Fowler v. Smith*, 240 Md. 240, 246, 213 A. 2d 549 (1965); *Wheeler Transp. Co., Inc. v. Katzoff*, 242 Md. 431, 219 A. 2d 250 (1966); *Witriol v. Pfueller*, 247 Md. 177, 186, 230 A. 2d 346 (1967); *Mazer v. Stedding*, 10 Md. App. 505, 271 A. 2d 381 (1970).

*Judgment affirmed; appellants to pay the costs.*