KAREN L. WOOSLEY, as Guardian ad Litem of ZACHARY C. ADAMS, a Minor Child; and DOROTHY B. ADAMS, Individually, as Guardian ad Litem of WHITNEY ADAMS, a Minor, and on Behalf of the ESTATE OF DOUGLAS ADAMS, Deceased, Appellants, v. STATE FARM INSURANCE COMPANY, Respondent.

No. 33647

March 6, 2001                                    18 P.3d 317

[Rehearing denied July 17, 2001]

*Curtis B. Coulter,* Reno, for Appellant Woosley.

*Leverty & Associates* and *Matthew L. Sharp,* Reno, for Appellant Adams.

*Burton Bartlett & Glogovac,* Reno, for Respondent.

184

**OPINION**

By the Court, SHEARING, J.:

This is an appeal from a judgment following a jury verdict and the district court's denial of a motion for a new trial in an action for breach of contract to collect uninsured motorist benefits. Douglas Adams was killed in a car accident caused in part by the alleged negligence of an unknown driver. Adams' automobile insurance policy permitted his family (appellants) to apply for uninsured motorist benefits under the policy. Respondent, State Farm Insurance Company (State Farm), denied appellants' application for uninsured motorist benefits pursuant to the policy, and appellants filed an action for breach of contract. A jury returned a verdict for State Farm, and the district court entered judgment in accordance with the verdict. The district court subsequently entered an order denying appellants' motion for a new trial.

Appellants appeal, claiming the district court erred in entering the judgment and abused its discretion by denying the motion for a new trial in light of its failure to give a res ipsa loquitur instruction and a mistaken and erroneous comparative negligence instruction. We conclude that the evidence adduced at trial did not support the proffered res ipsa loquitur instruction in light of the evidence of Adams' comparative negligence. However, res ipsa loquitur as adapted in accordance with the current comparative negligence scheme should have been considered by the jury. We

therefore remand this case to the district court for further proceedings consistent with this opinion.

## FACTS

On May 20, 1994, Douglas Adams was killed in an automobile accident on Highway 395 in Reno when he swerved to avoid a ladder that had fallen in the middle of his lane and collided with a utility truck stopped in the emergency lane. Pursuant to Adams' State Farm automobile insurance policy, appellants filed a claim to collect uninsured motorist benefits, asserting that Adams' death was caused by the negligence of an unknown driver (John Doe) who had dropped the ladder. State Farm refused to pay the benefits.

Appellants filed a complaint against State Farm for breach of contract, bad faith, breach of the implied covenant of good faith and fair dealing and unfair trade practices.[1] The parties agreed to dismiss the breach of the implied covenant of good faith and fair dealing claim without prejudice. Judge Peter I. Breen severed and stayed the bad faith claim and other extra-contractual claims, and the parties proceeded to trial on the breach of contract claim only.

At trial, appellants argued that they were entitled to uninsured motorist benefits under Adams' policy because the accident was substantially caused by the negligence of John Doe when he dropped the ladder in the middle of the highway lane.[2] State Farm countered that appellants were not entitled to the coverage because Adams' contributory negligence exceeded that of John Doe, therefore barring the claim for "uninsured motorist" benefits.[3] Appellants put forth evidence implying the negligence of John Doe and attempted to rely on the doctrine of res ipsa loquitur in support of their claim of negligence against John Doe. To prevail on their breach of contract claim and recover uninsured motorist benefits, appellants had to prove the uninsured motorist was negligent and that negligence caused Adams' death.

At trial, witnesses testified about the events leading up to the accident. Adams was driving southbound in the left lane on

---

[1]Appellants also sued the owner of the utility truck stopped in the emergency lane, Washoe Keystone, and its driver, Dennis Collins, alleging that Collins negligently stopped on the shoulder of the highway and caused Adams' accident. The parties settled these claims during trial. Karen Woosley, in her representative capacity, initially sued each party separately from the other appellants, but the district court consolidated her claims with those of the other appellants.

[2]Although John Doe is not necessarily an "uninsured motorist" under NRS 690B.020(3)(f), the parties did not litigate this issue. But State Farm's insurance policy implied that John Doe was included under the policy as an "uninsured motorist" because he was an unknown driver.

[3]See NRS 41.141.

Highway 395 in Reno, maintaining a speed of approximately fifty-five to sixty-five miles per hour with the flow of traffic. He encountered a ladder lying in the left lane, extending partially into the left emergency lane, and a Washoe Keystone utility truck parked in that emergency lane. Approaching the ladder, he swerved to the left into the emergency lane to avoid the ladder, noticed the truck blocking his path, and swerved back to the right. He was unable to avoid the ladder or the truck, and collided with the ladder, the rear end of the truck and finally the cement median. Adams died as a result of the accident; Adams' passenger, his son Zachary, survived.

Witnesses testified that Adams was speeding slightly that day. They also testified to the presence of another car in the adjacent right lane, although they disagreed whether Adams could have moved to the right to avoid the ladder. Further testimony indicated that numerous drivers before Adams had seen the ladder in the road previously and had either braked or changed lanes to avoid it, without incident. Police Officer Jerry Seevers testified that the primary cause of the accident was the ladder in the road. He further stated that the ladder was visible from a slight distance, that it could be driven over, and that Adams' failure to stay in his lane was an additional cause of the accident. Appellants conceded at trial that Adams may have been partially negligent, and State Farm argued that Adams' speeding and inappropriate swerving caused the accident.

John Menges testified that he observed an F-250 Ford pickup truck traveling southbound in the left lane on Highway 395 a few minutes before the accident. The truck had a ladder attached to the roof that was not securely fastened. Menges observed the ladder fall off the truck into the left lane, its location when Adams came across it. Menges followed the driver (John Doe), flagged him over at the South Virginia Street exit, and informed him that the ladder had fallen from his truck. Menges testified that John Doe asked whether the ladder had caused an accident, to which Menges responded "no." Menges also told him to return to get the ladder. Menges last observed John Doe turning towards McCarran Boulevard, as if to return to Highway 395. Menges could not remember the Ford's license plate number and only recalled that the truck had silver lettering from a roofing company on the side. Neither the Nevada Highway Patrol nor Adams' wife located John Doe or his truck.

At the close of evidence, appellants requested a jury instruction on res ipsa loquitur. The proposed instruction read:

> On the issue of negligence, one of the questions for you to decide in this case is whether the accident occurred under the following conditions:

First, that it is the kind of accident that ordinarily does not occur in the absence of someone's negligence;

Second, that it was caused by an agency or instrumentality over which John Doe had the exclusive right of control originally, and which was not mishandled or otherwise changed after John Doe relinquished control; and

Third, that the accident was not due to any voluntary action or contribution on the part of the plaintiffs which was the responsible cause of his injury in that plaintiffs are not in a position to know what specific conduct caused the accident, whereas the one in charge of the instrumentality may reasonably be expected to know and be able to explain how the accident was caused, or at least be able to show that no failure of duty on his part was a cause.

If you should find all these conditions to exist, you are instructed as follows:

You must find from the happening of the accident involved in this case that a cause of the occurrence was some negligent conduct on the part of John Doe.

The district court denied the instruction, concluding that because Adams was contributorily negligent, he failed to meet the requirements of the third element, and accordingly a res ipsa loquitur instruction was unsupported by the evidence. Appellants objected.

When the district court judge read the remaining instructions to the jury, he included several instructions stating that appellants needed to prove the negligence of John Doe, and that the jury could weigh the comparative negligence of John Doe and Adams in apportioning liability and damages. However, the district court stated in its instruction on comparative negligence that the jury should consider whether Adams' negligence was greater than or less than that of the "defendant," which in this case was State Farm, and not that of John Doe. The instruction provided:

Comparative negligence is negligence on the part of the decedent which, cooperating to some degree with negligence of another, helps in proximately causing the death.

The plaintiffs may not recover damages if the decedent's comparative negligence contributed more to his death **than the negligence of the defendant.** However, if the decedent was negligent, the plaintiffs may still recover a reduced sum, so long as the decedent's comparative negligence was not greater **than the negligence of the defendant.**

(Emphasis added.) Appellants failed to object to this misstatement in the instruction.

In closing arguments, both parties argued the comparative negligence of John Doe and Adams. Additionally, the special verdict

form the jury received required the jury to apportion the relative fault between John Doe and Adams. Nowhere was State Farm mentioned by name as being a negligent party.

The jury returned a verdict for State Farm, and the court entered a judgment based on this verdict. Appellants subsequently filed a motion for new trial alleging that: (1) the district court erred in failing to give the res ipsa loquitur instruction in light of Nevada's comparative negligence statute; and (2) the district court committed reversible error by misstating the negligent parties in the comparative negligence instruction. The district court denied the motion, stating that because Adams was contributorily negligent, he was ineligible to invoke the res ipsa loquitur doctrine under the third element. Further, the district court concluded that both the instructions taken as a whole, together with counsel's arguments, clearly explained which parties' negligent acts were to be considered and that there was no danger of jury misunderstanding or confusion. This timely appeal followed.

## DISCUSSION

A new trial may be granted if there was an error of law at trial that was objected to by the party making the motion.[4] We review a denial of a motion for new trial for abuse of discretion, and we will not disturb the district court's decision on appeal absent palpable abuse.[5] A party is entitled to an instruction on every theory that is supported by the evidence, and it is error to refuse such an instruction when the law applies to the facts of the case.[6]

### Res ipsa loquitur instruction

Res ipsa loquitur is an exception to the general negligence rule, and it permits a party to infer negligence, as opposed to affirmatively proving it, when certain elements are met.[7] In order for the doctrine to apply, traditionally a party must show:

> (1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) the event must be caused by an agency or instrumentality within the exclusive control of the defendant; and (3) the event must not

---

[4]NRCP 59(a)(7).

[5]*Southern Pac. Transp. Co. v. Fitzgerald,* 94 Nev. 241, 244, 577 P.2d 1234, 1236 (1978).

[6]*Johnson v. Egtedar,* 112 Nev. 428, 432, 915 P.2d 271, 273 (1996); *see also Village Development Co. v. Filice,* 90 Nev. 305, 312, 526 P.2d 83, 87 (1974).

[7]*Davies v. Butler,* 95 Nev. 763, 776-77, 602 P.2d 605, 613 (1979).

have been due to any voluntary action or contribution on the part of the plaintiff.[8]

Nevada has incorporated these three elements into its pattern jury instructions.[9] Nevada also requires the defendant to have superior knowledge of or be in a better position to explain the accident for res ipsa loquitur to apply.[10] Once the elements of res ipsa loquitur are met, the burden shifts to the defendant to show that something other than its negligence caused the accident.[11] Whether sufficient evidence supports an inference of negligence under res ipsa loquitur is a question for the jury; however, the district court must first determine whether sufficient evidence has been adduced at trial to support the consideration of a res ipsa loquitur instruction and therefore whether the instruction should be given.[12]

Appellants argue that the third element should be revised in accordance with contemporary comparative negligence law and NRS 41.141. We agree. The district court concluded that because Adams was contributorily negligent, appellants failed to meet the third element of res ipsa loquitur and therefore did not merit the instruction. We conclude that such an interpretation conflicts with our established law concerning comparative negligence. Accordingly, we take this opportunity to revise the third element of res ipsa loquitur to comport with our comparative negligence statute at NRS 41.141.

Although Nevada used to recognize the complete bar of a plaintiff's recovery under the theory of contributory negligence, NRS 41.141 replaced this harsh rule. The statute permits a plaintiff to recover as long as his or her comparative negligence is not greater

[8]*Bialer v. St. Mary's Hospital,* 83 Nev. 241, 243, 427 P.2d 957, 958 (1967).

[9]Nev. J.I. 4.18-4.19.

[10]*Otis Elevator Co. v. Reid,* 101 Nev. 515, 519, 706 P.2d 1378, 1380 (1985). State Farm argues that because it is not in any position to explain the cause of the accident, res ipsa loquitur is inapplicable. Upon review of the record, we conclude that appellants asserted the res ipsa loquitur doctrine to circumstantially prove John Doe's negligence, not that of State Farm. Because John Doe is an unknown motorist, State Farm became a party to the action by virtue of the insurance policy. Res ipsa loquitur was merely raised to explain John Doe's negligence and is not asserted against State Farm, and thus State Farm's lack of knowledge does not preclude the use of the doctrine. Thus, for purposes of the doctrine, John Doe is the "defendant" whose conduct is at issue.

[11]*American Elevator Co. v. Briscoe,* 93 Nev. 665, 669, 572 P.2d 534, 537 (1977).

[12]*Johnson,* 112 Nev. at 434, 915 P.2d at 274; *see also Nyberg v. Kirby,* 65 Nev. 42, 78, 188 P.2d 1006, 1022-23 (1948).

than that of the defendant or defendants. NRS 41.141 provides, in pertinent part:

> 1. In any action to recover damages for death or injury to persons or for injury to property in which comparative negligence is asserted as a defense, the comparative negligence of the plaintiff or his decedent does not bar a recovery if that negligence was not greater than the negligence or gross negligence of the parties to the action against whom recovery is sought.
>
> 2. In those cases, the judge shall instruct the jury that:
>
> (a) The plaintiff may not recover if his comparative negligence or that of his decedent is greater than the negligence of the defendant or the combined negligence of multiple defendants.

''[T]he purpose of the comparative negligence statute [is] to eradicate the harsh effect of a plaintiff's contributory negligence whenever such negligence is not greater than that of the source against which recovery is sought.''[13]

We have previously stated that the comparative negligence statute renders certain common law complete defenses inapplicable. Specifically, we have recognized that the comparative negligence statute subsumes the doctrines of assumption of the risk and last clear chance.[14] In these cases, we acknowledged that a plaintiff may still proceed in the underlying negligence suit, and the common law defenses cannot bar the suit, provided that the plaintiff's negligence does not exceed that of the defendant.[15] Otherwise, these doctrines would subvert the principles of comparative negligence and would compel results inconsistent with the plain language of NRS 41.141.

Likewise, other jurisdictions have reached similar conclusions with respect to the effect of comparative negligence statutes on the third element of res ipsa loquitur. Many jurisdictions have concluded that if that jurisdiction has incorporated comparative negligence into its statutes or common law, a plaintiff's negligence does not bar the use of res ipsa loquitur.[16] In fact, many jurisdic-

---

[13]*Mizushima v. Sunset Ranch,* 103 Nev. 259, 263, 737 P.2d 1158, 1160-61 (1987).

[14]*Mizushima,* 103 Nev. at 263, 737 P.2d at 1160-61 (assumption of the risk); *Davies,* 95 Nev. at 776, 602 P.2d at 613 (last clear chance).

[15]*Id.*

[16]*See, e.g., Cox v. May Dep't Store Co.,* 903 P.2d 1119, 1124 (Ariz. Ct. App. 1995) (Ariz. Rev. Stat. §§ 12-2501-2509); *Emerick v. Raleigh Hills Hosp.-Newport Beach,* 184 Cal. Rptr. 92 (Ct. App. 1982); *Montgomery Elevator Co. v. Gordon,* 619 P.2d 66 (Colo. 1980) (Colo. Rev. Stat. § 13-21-111); *Tipton v. Texaco, Inc.,* 712 P.2d 1351 (N.M. 1985); *Cramer v. Mengerhausen,* 550 P.2d 740 (Or. 1976); *Tinder v. Nordstrom, Inc.,* 929 P.2d

tions have entirely eliminated the third element of res ipsa loquitur as a result of comparative negligence, rendering the res ipsa loquitur test a two-part analysis.[17] Still other jurisdictions have modified the third element to reflect the rules of comparative negligence within that jurisdiction to permit res ipsa loquitur to apply when the defendant's negligence is greater than that of the plaintiff.[18] This modified approach permits res ipsa loquitur to apply, although there is some evidence of comparative negligence, when the plaintiff produces evidence showing that the defendant's negligence was a substantial factor in causing the plaintiff's injury.[19]

To completely bar plaintiffs from the use of res ipsa loquitur in situations where comparative negligence applies contravenes the express language of NRS 41.141. Accordingly, we conclude that NRS 41.141 operates to subsume the third element of res ipsa loquitur. From this point forward, the third element of res ipsa loquitur is revised to provide that the doctrine may apply as long as the plaintiff's negligence is not greater than that of the defendant. On this point, we expressly overrule the test for res ipsa loquitur as stated in *Bialer v. St. Mary's Hospital*[20] in favor of the one stated in this opinion. The doctrine of res ipsa loquitur is to henceforth reflect the impact of comparative negligence and NRS 41.141.

Accordingly, we set forth the following sample instructions for consideration by the district courts in cases where res ipsa loquitur is appropriately considered by the jury based on the evidence adduced by the parties. Because the act to which the inference of negligence is attributed under res ipsa loquitur differs when comparative negligence exists, we set forth two alterna-

---

1209 (Wash. Ct. App. 1997); *see also* Prosser & Keeton, *Law on Torts* § 39 at 254 (5th ed. 1984). *But see Otis Elevator Co. v. Chambliss,* 511 So. 2d 412, 414 n.5 (Fla. Dist. Ct. App. 1987) (recognizing that many states have incorporated comparative negligence into res ipsa loquitur but declining to reach issue under Florida law); *Victory Park Apartments, Inc. v. Axelson,* 367 N.W.2d 155 (N.D. 1985) (same under North Dakota law).

[17]*See, e.g., Bradshaw v. Freightliner Corp.,* 937 F.2d 197 (5th Cir. 1991) (applying Texas law); *Cox,* 903 P.2d at 1124; *Montgomery Elevator,* 619 P.2d at 70 (eliminating third element and modifying to explain effect of comparative negligence on jury's consideration); *Dyback v. Weber,* 500 N.E.2d 8 (Ill. 1986); *Tinder,* 929 P.2d at 1213; *Turk v. H.C. Prange Co.,* 119 N.W.2d 365, 372 (Wis. 1963).

[18]*See, e.g., Emerick,* 184 Cal. Rptr. at 98; *Giles v. City of New Haven,* 636 A.2d 1335 (Conn. 1996); *Frans v. Gausman,* 6 P.3d 432 (Kan. Ct. App. 2000); *Tipton,* 712 P.2d at 1359; *Kloos v. Ohio Dep't of Rehab. and Corr.,* 610 N.E.2d 643 (Ohio Ct. Cl. 1989); *Cramer,* 550 P.2d at 744; *Cyr v. Green Mountain Power Corp.,* 485 A.2d 1265 (Vt. 1984); *Foster v. City of Keyser,* 501 S.E.2d 165 (W. Va. 1997).

[19]*Cramer,* 550 P.2d at 744 (citing *Turk,* 119 N.W.2d 365).

[20]83 Nev. at 243, 427 P.2d at 958.

tives—one for circumstances when there is no comparative negligence evident, and the other for instances when there is some evidence to suggest comparative negligence. We caution the district courts that the following proposed instructions should not necessarily be used verbatim, but rather should be used as a guide and tailored to fit the individual facts of each case.

For cases when there is no evidence adduced of comparative negligence, the sample instruction to consider is:

> On the issue of negligence, one of the questions for you to decide in this case is whether the accident or injury occurred under the following conditions.
>
> First, that it is the kind of accident or injury which ordinarily does not occur in the absence of someone's negligence; and
>
> Second, that it was caused by an agency or instrumentality within the exclusive control of [the allegedly negligent party's name], and which was not mishandled or otherwise changed after [the allegedly negligent party's name] relinquished control.

The district court should also provide an instruction relating to proximate cause as follows:

> If you should find all these conditions to exist, you are instructed as follows:
>
> From the happening of the accident or injury involved in this case, you may, but are not required to, draw an inference that the proximate cause of that accident or injury was some negligent conduct by [the allegedly negligent party's name].
>
> However, you shall not find that a proximate cause of the accident or injury was some negligent conduct on the part of [the allegedly negligent party's name] unless you believe, after weighing all the evidence in the case, and drawing such inferences therefrom as you believe are warranted, that it is more probable than not that the accident or injury was caused by some negligent conduct on the part of [the allegedly negligent party's name].

If, on the other hand, one of the parties has adduced sufficient evidence of comparative negligence to warrant the jury's consideration of that doctrine, the following sample instruction should be considered:

> On the issue of the negligence of [the allegedly negligent party's name], one of the questions for you to decide in this

case is whether the event or occurrence attributed to [the allegedly negligent party's name] which is alleged to have caused the accident or injury occurred under the following conditions.

First, that it is the kind of event or occurrence which ordinarily does not occur in the absence of someone's negligence; and

Second, that that event or occurrence was caused by an agency or instrumentality within the exclusive control of [the allegedly negligent party's name], and which was not mishandled or otherwise changed after [the allegedly negligent party's name] relinquished control.

Again, the district court should then instruct the jury on the causal link between that negligence and the accident or injury as follows. Since comparative negligence is alleged to have occurred when this sample instruction is considered, the proximate cause instruction should address the appropriate weighing, according to our statutory comparative negligence scheme, the jury should give to each respective party's negligence.

If you should find all these conditions to exist, you are instructed as follows:

From the happening of the event or occurrence attributed to [the allegedly negligent party's name], you may, but are not required to, infer that an ultimate cause of the resulting accident or injury was some negligent conduct by [the allegedly negligent party's name].

However, you shall not find that a proximate cause of the resulting accident or injury was some negligent conduct on the part of [the allegedly negligent party's name] unless you believe, after weighing all the evidence in the case and drawing such inferences therefrom as you believe are warranted, that it is more probable than not that the accident or injury was ultimately caused by some negligent conduct on the part of [the allegedly negligent party's name].

The plaintiff[s] may not recover damages if the [plaintiff's or decedent's] comparative negligence contributed more to the accident or injury than [the allegedly negligent party's name] comparative negligence. However, if the [plaintiff or decedent] was negligent, the plaintiffs may still recover so long as the [plaintiff's or decedent's] comparative negligence was not greater than that of [the allegedly negligent party's name].

Here, in light of this revised test, appellants set forth evidence sufficient to warrant the consideration of the new res ipsa loquitur

instruction addressing comparative negligence. Appellants demonstrated that John Doe was in exclusive control of the ladder and that ladders do not normally fall off moving vehicles into traffic absent a negligent act or omission. Accordingly, because appellants also set forth evidence that Adams' negligence was not greater than that of John Doe, we conclude that appellants produced sufficient evidence for the jury to consider the application of res ipsa loquitur.

Because appellants were required to prove the negligence of the uninsured driver in order to recover uninsured motorist benefits under the State Farm insurance policy, res ipsa loquitur provided a viable means to do so. Appellants adduced evidence at trial inferring John Doe's negligence. We conclude that the jury should have been allowed to consider the theory of res ipsa loquitur. We hereby reverse the district court's judgment and order and remand for further proceedings consistent with this opinion.[21]

*Comparative negligence instruction*

We conclude that the comparative negligence jury instruction was erroneous because it misstated the appropriate parties' respective negligence for the jury's consideration. However, because we reverse the district court's judgment on the grounds of the failure to instruct on res ipsa loquitur, we need not analyze appellants' second claim of error further.

## CONCLUSION

In light of the revised instruction we provide today, we reverse the district court's judgment and denial of the motion for a new trial. Further, our decision clarifies that the comparative negligence standard articulated in NRS 41.141 is incorporated into the doctrine of res ipsa loquitur so that the doctrine comports with modern comparative negligence law. We therefore reverse the district court's judgment and order and remand for further proceedings.

MAUPIN, C. J., YOUNG, AGOSTI, ROSE, LEAVITT and BECKER, JJ., concur.

---

[21]State Farm also argues that appellants reframed the applicability of res ipsa loquitur on appeal by stating that the event to which the doctrine applied was the ladder falling from John Doe's truck and being left in Adams' travel lane. State Farm contends that appellants never raised this specific argument at trial and therefore are barred from appellate review of the issue. We conclude that appellants sufficiently raised the applicability of res ipsa loquitur to preserve the issue for our review.