888 A.2d 1211

**Dana SHAFER**

v.

**INTERSTATE AUTOMOBILE INSURANCE COMPANY et al.**

No. 279, Sept. Term, 2005.

Court of Special Appeals of Maryland.

Dec. 23, 2005.

Dennis F. O'Brien, Towson, Terry A. Myers, Hagerstown, on the brief, for appellant.

James M. Connolly, Owings Mills and Christine S. Britton, Towson, for appellee.

Panel: DAVIS, SALMON and ADKINS, JJ.

DAVIS, J.

The Circuit Court for Washington County (Beachley, J., presiding) granted summary judgment in favor of Interstate Automobile Insurance Company, and Nationwide Insurance Company, "Interstate" and "Nationwide," respectively, and entered judgment against Dana Shafer, appellant, on March 16, 2005. Appellant filed this appeal, where she presents one question:

> Did the circuit court err in granting appellees' motions for summary judgment, concluding that the uninsured motorist portions of their respective insurance policies did not provide coverage to appellant for this accident scenario?

We answer in the negative. Accordingly, we shall affirm the judgment of the lower court.

## FACTUAL BACKGROUND

This appeal arises from appellant filing a complaint, in April of 2004, seeking $100,000, under claims of uninsured motorist coverage of two automobile insurance policies. Appellant was injured while a passenger on a motorcycle owned and operated by Clarence Koontz. Appellant alleged in her complaint that the accident occurred "[o]n or about September 3, 2001, ... when the rear tire of the motorcycle struck a piece of metal on the road, and the tire blew out causing the motorcycle to go out of control and injure [appellant]." Appellant sustained serious injuries that required medical treatment. After the accident, the piece of metal that was discovered to be imbedded in the tire was analyzed and confirmed to be a "piece of automobile sheet metal that had corroded and fallen off a vehicle onto the roadway."

At the time of the accident, Interstate was the uninsured motorist coverage carrier for Koontz and Nationwide was the uninsured motorist coverage carrier for appellant. Appellant contended she was entitled to recover insurance coverage payments from Interstate and Nationwide because the accident and her subsequent injuries were a "direct and proximate result of the unidentified operator/owner's negligence," and

"without any negligence on her part." Appellant also filed a Motion for Partial Summary Judgment, seeking judgment as to liability only, against Interstate [1] and Nationwide [2] under their respective uninsured motorist policies.

---

1. The uninsured policy under the Interstate policy provided:
We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of:
 1. Bodily injury sustained by an insured and caused by an accident; and
 2. Property damage caused by an accident....
The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle. We will pay under this coverage only if 1. or 2. below applies:
 1. The limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgements [sic] or settlements; or
 2. A tentative settlement has been made between an Insured and the Insurer of an uninsured motor vehicle....
Insured as used in this endorsement means:
 1. You or any family member.
 2. Any other person occupying your covered motorcycle.
 3. Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in 1. or 2. above....
Uninsured motor vehicle means a land motor vehicle ...
 4. [w]hich is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or causes an accident resulting in bodily injury or property damage without hitting:
 a. You or any family member
 b. A vehicle which you or any family member are occupying; or
 c. Your covered motorcycle.

2. According to the Nationwide policy, the coverage agreement stated the company would:
 ... pay compensatory damages, including derivative claims, which are due by law to you or a relative from the owner or driver of an uninsured motor vehicle because of bodily injury suffered by you or a relative, and because of property damage. Damages must result from an accident arising out of the: 1. ownership; 2. maintenance; or 3. use; of the uninsured motor vehicle....
An uninsured motor vehicle is:
a) one for which there is no auto liability bond, insurance or other security in effect, applicable to the vehicle owner, operator, or any other liable person or organization, at the time of the accident....
e) a "hit-and-run" motor vehicle which causes bodily injury to an insured or property damage.
The driver and the owner of the "hit-and-run" vehicle must be unknown. The insured must report the accident to the police or proper

Counsel for Interstate and Nationwide deposed appellant and her expert witness, R. Scott Wills, an accident reconstruction consultant. Appellant testified about her recollection of the incident:

[Interstate's counsel]: Were you passing any vehicle at the time the accident occurred?

[Appellant]: No.

[Interstate's counsel]: Okay. Was there any vehicle to your right?

[Appellant]: There was a tractor trailer, a tanker.

[Interstate's counsel]: And how long had he or that tractor trailer been to your right?

[Appellant]: Well, probably five or ten minutes.

[Interstate's counsel]: At the place in the roadway where the accident occurred, how would you describe the slope of the roadway, is it going uphill, downhill, level?

[Appellant]: No, it's a flat [level slope].

[Interstate's counsel]: Were there any vehicles before you?

[Appellant]: There was nobody in front of us.

[Interstate's counsel]: Were you aware of any other vehicles about you other than this tractor trailer to the right?

[Appellant]: There was [sic] vehicles behind us, tractor trailer to the right, there were a couple vehicles in front of the tractor trailer. . . .

[Interstate's counsel]: . . . My understanding that the truck realizing that you were in some distress began to slow

---

governmental authority within 24 hours. We must be notified within 30 days that the insured or his legal representative has a legal action for damages arising out of the accident. This notification must include facts supporting the action. If we request, any motor vehicle the insured was occupying at the time of accident must be made available for our inspection.

If there is no physical contact with the "hit-and-run" vehicle, the facts of the accident must be proved. We will only accept competent evidence other than the testimony of any insured, whether or not that insured is making a claim under this or any similar coverage.

down so your bike could move in front of the truck and I guess eventually off the right side of the roadway?

[Appellant]: Yes.

[Interstate's counsel]: And then you said the back tire locked up?

[Appellant]: Yes.

[Interstate's counsel]: . . . The tire which was going flat was the rear tire to the bike?

[Appellant]: Yes.

[Interstate's counsel]: Okay. And did there come a point in time when the tire began to disintegrate?

[Appellant]: I don't—I don't know.

[Interstate's counsel]: Okay. Well, let me ask you this. You said the back tire locked up. What do you mean by that?

[Appellant]: As he was slowing down to come across in front of the tractor trailer to get off to the shoulder of the road, it just came to like a stop, I guess like a sudden jerk or something, I don't want to say, which throwed [sic] him and then the bike just continued to go with me on it for a short distance, I'm assuming, because then I got thrown from it. . . .

[Interstate's counsel]: Okay. Are you aware of any facts whatsoever to suggest that Clarence Koontz was in any way responsible for causing this accident?

[Appellant]: Oh, he wasn't—you know, there was no alcohol involved or anything of that nature.

[Interstate's counsel]: What about just the way he was operating his vehicle, do you have any reason to believe that the way he operated his vehicle in any was caused or contributed to the accident?

[Appellant]: No. . . .

[Interstate's counsel]: . . . As you were traveling down the roadway that day, were you able to see in front of the bike?

[Appellant]: Yes, yes.

[Interstate's counsel]: . . . And you said that there were other cars that were traveling in front of you, right?

[Appellant]: Right.

[Interstate's counsel]: And you said the traffic was very heavy that day?

[Appellant]: Yes.

[Interstate's counsel]: You didn't see any vehicle on the roadway swerving in front of you, did you?

[Appellant]: Oh, just—not swerving like they had been drinking or anything, but you know, passing and—

[Interstate's counsel]: Okay. As you looked up the roadway of that day, did you see anything in the—any type of object which was actually in the roadway before the motorcycle?

[Appellant]: No.

[Interstate's counsel]: . . . And you didn't see any vehicles in front of the bike swerving to any—to avoid any object which was in the roadway, correct?

[Appellant]: Oh, no.

[Interstate's counsel]: . . . Did Mr. Koontz ever tell you that he saw any object in the roadway that day?

[Appellant]: No. . . .

[Interstate's counsel]: In your answers to interrogatories, you state that an automobile operator or owner permitted his or her vehicle to rust and pieces fell onto the roadway?

[Appellant]: That's what we were told.

[Interstate's counsel]: Told by whom?

[Appellant]: Told by the man that analyzed the tire. The pictures that you have here in this, that these two wheels checked out with the tire and everything, that is was [sic] his discovery was. That's what we were told.

[Interstate's counsel]: Okay. So as to facts to support your contention that some piece of rust fell from a vehicle onto the roadway somehow caused or contributed to the acci-

dent, those facts would be those which were provided by Mr. Wills, correct?

[Appellant]: Yes.

[Interstate's counsel]: Okay. You, yourself, do you have any personal knowledge of any facts that this accident was somehow caused by rust falling from a vehicle?

[Appellant]: Only what I seen [sic] the metal that was in the tire and then being told by Mr. Wills who's an expert. . . .

During Wills' deposition, he explained his examination procedures and his ultimate findings:

[Nationwide's counsel]: . . . Please continue on with generally and in summary fashion . . . what your investigation revealed.

[Wills]: Well, I examined the tire that I was provided with, identified the tire, the make, model of the tire. I found— after examination of the tire I found a piece of metal in the tire, stuck, protruding through the outer portion of the tire into the inner area of the tire. It actually cut the inner liner of the tire and protruded through it. I removed that piece of metal from the tire and forwarded that to Matco for analysis. . . .

[Nationwide's counsel]: Before you examined the tire, did anybody express to you that there was a piece of metal in the tire? I mean did you know that beforehand—

[Wills]: Yes.

[Nationwide's counsel]:—or did you just find it?

[Wills]: No. When I picked the tire up from [appellant's counsel's] office I was told it is a motorcycle tire and there is a piece of metal stuck in the motorcycle tire.

[Nationwide's counsel]: . . . When you did your examination of the tire, what did your examination consist of? How did you do it?

[Wills]: Just really a visual examination looking at the overall tire and really concentrating on the piece of metal and photographing the tire before the piece of metal was removed. The question that was posed to me was wheth-

er the piece of metal was automotive related or other type of material. . . .

[Nationwide's counsel]: And as far as your examination of the tire, did you find any other indications of defects in the tire?

[Wills]: No. There were some surface abrasions, some abrasions near the bead area that would typically result when a tire separates from the wheel when it's rotating. But other than that, there were no other defects noted in the tire.

[Nationwide's counsel]: Was it your conclusion that the piece of metal that you found in the tire was the reason—the cause for the tire going flat?

[Wills]: Yes. As I said, it protruded the inner bladder that actually retains the air within the tire. And once the inner bladder has been protruded, such as this was, the air can escape and apparently did escape.

[Nationwide's counsel]: But it wasn't a blowout though? . . .

[Wills]: Well, according to the information—again, I wasn't there, but the information I received from [Koontz] and [Appellant], it was not a blowout. It was a rapid leak, if you would, but it wasn't a blowout *per se*, no.

[Nationwide's counsel]: As far as the general condition, what was that?

[Wills]: It was in good condition overall. . . .

[Interstate's counsel]: Do you have an opinion as to how the metal came into the roadway?

[Wills]: I have no idea how the metal came into the road, sir. All I know is it was in the road. Other than what I have already stated, of course, that it apparently fell off of something. I mean other than that, I don't know how it came in the road.

[Interstate's counsel]: You don't have an independent basis of determining, other than the Matco analysis, of determining where the metal came from or how it came off of something or even if it came off of something?

[Wills]: Well, it had to come off of something. I mean it is something. It appears to be something of a larger something, if you would. So it clearly came from something. But as to how it arrived there, no, I don't really know, but based upon the fact that it is part of a larger being, I would say it came from that larger being onto the roadway.

Interstate moved for summary judgment on January 5, 2005. Nationwide joined Interstate's motion for summary judgment on January 18, 2005, adopting Interstate's supporting memorandum. Interstate and Nationwide argued:

Although [Appellant] contends that this piece of metal "fell off a vehicle" and further contends that the owner or operator of the vehicle breached a duty of care to prevent such from happening, [Appellant] has failed to present any testimony whatever that an unidentified motor vehicle caused the piece of metal to come into the highway and that the owner or operator of this vehicle breached a duty of care of inspecting or maintaining the vehicle. Lacking any such evidence, [Appellant] is unable to make a *prima facie* case that this accident was caused by the negligence of an unidentified motor vehicle.

Interstate and Nationwide posit that, because appellant presented no genuine dispute as to a material fact, the insurers were entitled to judgment as a matter of law under Rule 2–501.

The court, after hearing oral argument, issued its ruling on March 16, 2005:

The duty of an owner or operator of a motor vehicle is to use reasonable care to ensure that it is in reasonably good condition and properly equipped so as to prevent injuries to others using the highway. *Sothoron v. West,* 180 Md. 539, 542 [26 A.2d 16] (1942). In Blashfield Automobile Law and Practice, the duty is succinctly articulated:

The owner or driver of a motor vehicle owes to oneself and to others a duty of inspection. The duty is to exercise reasonable care in the inspection to discover any

defects which may prevent the proper operation of the vehicle, and one is chargeable with knowledge of any defects which such inspection would disclose.

An owner or operator, however, may not be liable for injuries resulting from an unknown defect or one which would not have been revealed by a reasonable and prudent inspection. Where a reasonable examination by the owner of an automobile fails to disclose defects, the owner is relieved from responsibility for damages arising from undisclosed defects.

2 Patrick D. Kelly, Blashfield Automotive Law and Practice § 107.3 (Rev.3d ed.1979).

In deciding a motion for summary judgment, the Court is required to consider the evidence in a light most favorable to the party opposing the motion. *Serio v. Baltimore County, Maryland,* 384 Md. 373, 388 [863 A.2d 952] (2004). Viewing the evidence in a light most favorable to the [Appellant], the Court finds that the [Appellant] could conceivably prove the following facts:

- [Koontz] did nothing to cause the accident.
- [Koontz] detected a loss of control of the motorcycle and attempted to safely leave the roadway.
- Prior to completely leaving the roadway, the deflating tire separated from the rim, locking the wheel and causing a sudden and irreversible loss of control.
- After the accident, a piece of metal was found in the tire.
- The piece of metal was the cause of deflation of the tire due to puncture and penetration.
- The piece of metal is consistent ("better than 50%" according to [Appellant's] expert) with automotive sheet metal typically found in the outer skin of a car.
- The piece of metal corroded and fell off a motor vehicle onto the roadway.

While the [Appellant] has produced substantial evidence concerning the cause of the deflation of the motorcycle's tire, there is no evidence from which the trier of fact could

conclude that the owner or operator of the vehicle from which the metal piece allegedly fell breached his duty of inspection. As noted in the Blashfield treatise, an owner or operator is not liable for injuries from an unknown defect or one which would not have been revealed by a reasonable and prudent inspection. Blashfield, *supra*, § 107.3. Applying this principle to the case at bar, there are no facts or reasonable inferences therefrom that the piece of metal with dimensions of one and one-quarter inches in length and one-quarter inch in width would have been detected by a reasonable and prudent inspection of the vehicle. Indeed, Scott Wills testified at deposition that the piece of metal was painted on one side and had "surface oxidation" (*i.e.*, rust) on the other side. However, Wills verified that the metal was not "rusted through." Other than being consistent with sheet metal commonly used for the outer skin of an automobile, Wills could not testify about the part of the automobile where the metal piece originated.

The cases cited by [Appellant] are not persuasive. *Frazier v. Unsatisfied Claim and Judgment Fund*, 262 Md. 115 [277 A.2d 57] (1971), involved injuries sustained when a passenger in an unidentified car threw a firecracker into the plaintiff's vehicle. Unlike this case, the issue in *Frazier* was whether the injuries arose "out of ownership, operation or use" of a motor vehicle. *Woosley v. State Farm Ins. Co.*, [117 Nev. 182] 18 P.3d 317 (Nev.2001), and *Hale v. American Family Mutual Ins. Co.*, 927 S.W.2d [522] (Mo.Ct.App. 1996), are also distinguishable. Both cases apply the doctrine of *res ipsa loquitur*, which [Appellant] in the case at bar concedes is inapplicable. *Muncy v. American Select Ins. Co.*, [129 Ohio App.3d 1] 716 N.E.2d 1171 (Ohio Ct.App. 1998), involved a claim for uninsured motorist benefits where the plaintiff alleged that the cause of the accident was the negligent dropping of a wooden object in the roadway by an unknown vehicle. There was evidence by affidavits that "the wood in the roadway could have come from two sources: (A) a motor vehicle from which the load was not adequately secured or (B) a pedestrian who deposit-

ed the wood on the roadway." *Id.* at 1175. However, the affidavits discounted the pedestrian theory because there was a "lack of pedestrian access" at the location of the accident. *Id.* The Court of Appeals of Ohio (Tenth District) held that these affidavits adequately supported a theory of negligence by an unidentified operator of a vehicle, *i.e.*, the improper securing of the wooden pallet to the unidentified vehicle. *Muncy* is fatally distinguishable from the present case as a wooden pallet is not a component of a motor vehicle. The reasonable inference in *Muncy* is that the wooden pallet was being transported by a vehicle and that it fell off because it was negligently secured. The same cannot be said for a small metal piece that presumably fell off a vehicle.

Although not factually apposite, the analysis in *Carter v. Shoppers Food Warehouse Md. Corp.*, 126 Md.App. 147 [727 A.2d 958] (1999), is instructive. There, the plaintiff injured her knee when she fell in the produce section of a grocery store. After the fall, the plaintiff noticed that one corner of the carpet was turned up, leading her to believe this was the cause of the accident. The trial court granted summary judgment in favor of the grocery store on the basis that there was insufficient evidence to establish a *prima facie* case of negligence. The Court of Special Appeals affirmed, relying on the well-established principle of premises liability law that the property owner must have actual or constructive notice of the dangerous condition. *Id.* at 164 [727 A.2d 958]. The Court discussed the property owner's duty to inspect and its corollary proposition of constructive knowledge of the dangerous condition, it would not be reasonable to require appellee constantly to inspect the produce section and fix the floor mats each time a corner becomes misplaced or turned up." *Id.* Summary judgment was therefore proper because the plaintiff failed to produce evidence that the grocery store had actual and constructive knowledge of the carpet's condition.

*Carter* is instructive because the grocery store's duty to inspect is analogous to the duty imposed on a motor vehicle

owner or operator to inspect his vehicle for dangerous condition. The principle that a motor vehicle owner or operator is, in the parlance of Blashfield, "chargeable with knowledge of any defects which such inspection would disclose," is the legal equivalent of constructive knowledge. Summary judgment was held to be proper in *Carter;* it is, likewise, appropriate in the case *sub judice.*

## IV. Conclusion

For the reasons stated herein, [Appellant's] Motion for Partial Summary Judgment is denied and [Appellees'] Motions for Summary Judgment are granted. The Clerk is instructed to enter a final judgment in favor of Defendants [Interstate and Nationwide].

Appellant then filed a timely appeal to this Court.[3]

## LEGAL ANALYSIS

Appellant argues that the court erred in granting summary judgment to Interstate and Nationwide because she presented sufficient evidence to satisfy the elements of the uninsured motorist statute. She also claims that the facts of the accident "trigger[ ] the 'hit-and-run' definition of uninsured motor vehicle." As such, appellant asserts that, because it is undisputed that she was insured at the time of the accident, she was injured and there are no exclusions that apply to her case, the sole issue is whether she is entitled to recover from Interstate and Nationwide because the unidentified owner or operator of an uninsured vehicle was negligent in causing her injuries.[4]

---

3. Because the clerk of the court failed to follow the circuit court's directive to set forth a judgment in favor of Interstate and Nationwide on a separate document, Chief Judge Murphy of this Court issued an Order, dated July 29, 2005, providing for the entry of judgment for appellees on a separate document under Rule 2–601(a).

4. Appellant posits in her brief, "Having chosen not to obtain competing opinions, the Appellees are bound by the testimony and affidavit of the Appellant's experts, which could not be more clear in the expression that the cause of the accident was the metal, which punctured the tire and that the metal was a piece of rusted sheet metal that fell from a car.

Appellant further contends that she demonstrated the requisite proof which should have led to the court denying appellees' summary judgment motion, and ultimately, led her to recovery under the uninsured coverage agreements of both companies. We disagree.

Pursuant to Maryland Rule 2–501(f), a trial court

> shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law.

■ "Appellate courts reviewing an order granting a motion for summary judgment must determine whether the trial court was legally correct." *Maryland Cas. Co., et al., v. Lorkovic*, 100 Md.App. 333, 354, 641 A.2d 924 (1994)(quoting *Beatty v. Trailmaster Prods., Inc.*, 330 Md. 726, 737, 625 A.2d 1005 (1993)). Because we review a trial court's grant of summary judgment *de novo*, we must first decide whether a genuine dispute of material fact exists. *de la Puente, et al. v. County Commissioners of Frederick County*, 386 Md. 505, 510, 873 A.2d 366 (2005). "If no such dispute exists, we proceed to review determinations of law," and examine the "facts properly brought before the court, and any reasonable inferences that may be drawn from them [ ] construed in the light most favorable to the non-moving party." *Id.* (citations omitted.)

---

This brings us to the crux of the case, which is whether the Appellant's injuries are due to an accident arising out of the ownership, maintenance or use of an uninsured motor vehicle."

At oral argument before the Panel of this Court, counsel for both sides generally acknowledged that, although the rusted metal could have been part of a load being transported, the probability was more likely than not that the rusted metal fell off of a vehicle in transit. The members of the Panel and counsel generally agreed that the so-called "crux" of the case is really whether a fact finder could conclude, either directly or inferentially, from the submissions appellant adduced in resisting the motion for summary judgment, that the rusted metal dislodged from the unidentified motor vehicle because of the negligent failure of the owner or operator to properly maintain the vehicle in proper condition.

 Regarding the enactment of uninsured motorist statutes, it is well settled that the "purpose of the required uninsured motorist coverage is to make available the same coverage as would have been available had the tortfeasor complied with the liability insurance requirements of the financial responsibility law." *Johnson v. Nationwide Mut. Ins. Co.*, 388 Md. 82, 92, 878 A.2d 615 (2005) (quoting *Forbes v. Harleysville Mut. Ins. Co.*, 322 Md. 689, 698, 589 A.2d 944 (1991)). Generally, the elements required for a cause of action in negligence include "a duty or obligation which the defendant is under to protect plaintiff from injury, a failure to discharge that duty, and actual loss or injury to the plaintiff proximately resulting from that failure." *Weber v. Unsatisfied Claim and Judgment Fund Board*, 261 Md. 457, 462, 276 A.2d 86 (1971) (citation omitted.) The court also scrutinizes the actions of the moving party in a claim involving negligence, demonstrating that "[a] person injured must eliminate his own conduct as a cause of the injury." *Apper v. Eastgate Assocs.*, 28 Md.App. 581, 588, 347 A.2d 389 (1975) (citation omitted.) Upon our review of the facts and the applicable law, we conclude that the court below did not err in granting summary judgment to Interstate and Nationwide, and against appellant.

Appellant, in her brief, presents extensive evidence in an attempt to establish that she proved her entitlement to recovery from the insurers for uninsured motorist coverage. More specifically, she delineates the "basic elements" of an uninsured motorist claim, as "derived from" the Insurance Article § 19–509(c): [5]

---

**5.** Section 19–509(c) provides:

(c) In addition to any other coverage required by this subtitle, each motor vehicle liability insurance policy issued, sold, or delivered in the State after July 1, 1975, shall contain coverage for damages, subject to the policy limits, that:
(1) the insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in a motor vehicle accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle; and

1. The claimant must be an insured.

2. The claimant must be entitled to damages.

3. The claimant must be entitled to recover damages from the owner or operator of an uninsured vehicle.

4. The claimant must be able to recover for bodily injury.

5. The injury must be sustained in or be the result of a motor vehicle accident arising out of the ownership, maintenance of [sic] use of the uninsured vehicle.

6. The person must not be excluded or otherwise precluded from recovery.

Appellant also cites what she contends are facts established from the evidence that support her claim:

a. [Koontz] did nothing to cause the accident.

b. [Koontz] noted progressive loss of control and attempted to leave the roadway.

c. Prior to completely leaving the roadway, the deflating tire separated from the rim, locking the wheel and causing a sudden and irreversible loss of control.

d. After the accident, the tire was preserved and a rusty piece of metal was found to have punctured the tire, causing it to deflate. (Appellant has provided expert opinion as to this.)

e. The piece of metal is consistent, to a reasonable degree of engineering certainty, with that used in car sheet metal and was rusted, leading to the conclusion reached by the experts, that it was a rusty car part that fell from a vehicle onto the road.

Additionally, in support of appellant's contention that the injuries she sustained were the result of an accident arising

---

(2) a surviving relative of the insured, who is described in § 3–904 of the Courts Article, is entitled to recover from the owner or operator of an uninsured motor vehicle because the insured died as the result of a motor vehicle accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle.
Md.Code (2002 Repl.Vol., 2005 Supp.), Ins. II § 19–509(c).

out of the ownership, maintenance or use of an uninsured motor vehicle, she offers the following:

a. A piece of metal on the road, which is more likely than not a piece of motor vehicle sheet metal that rusted and fell off of a vehicle, based upon the uncontroverted opinions of two experts;

b. An accident which was caused by this metal being on the roadway;

c. A failure to maintain the vehicle by the owner and operator leading to the metal falling off; again based on the uncontroverted opinion of two experts; and

d. No other cause for the accident or metal in the roadway has been advanced by any credible evidence. [Interstate and Nationwide] suggested any number of ways metal could have gotten there, although they offer no evidence as to any of their theories.

Assuming the certitude of appellant's statements, she has failed to satisfy her burden of proving that the accident and her injuries were the result of an *unidentified party's negligence*. Consequently, there has been no showing that the court granting summary judgment in favor of Interstate and Nationwide erred in the instant case. It is undisputed that appellant suffered an injury and that neither appellant nor Koontz, as owner and operator of the motorcycle upon which appellant was a passenger, did anything to contribute to the accident that caused her injuries. In order to counter the motion for summary judgment by Interstate and Nationwide, however, appellant was required to adduce facts that would lead to a reasonable inference of some negligent act performed by the tortfeasor that caused her injuries. *See Beatty, supra,* 330 Md. at 737–38, 625 A.2d 1005 (enunciating that, for a party to defeat a summary judgment motion, "the opposing party must show that there is a genuine dispute as to a material fact by proffering facts which would be admissible in evidence," but "mere general allegations which do not show facts in detail and with precision are insufficient to prevent summary judgment.") (citations omitted.) Without evidence of negligence,

there was no genuine dispute as to a material fact concerning negligence for the court to submit to the fact-finder.

The only argument appellant has presented to this Court and the court below is that, according to appellant, based on the facts of this case, she should receive uninsured motorist coverage. What is clearly lacking is evidence that supports appellant's allegations that the phantom tortfeasor failed to discharge his/her duty of care with respect to the errant piece of automotive sheet metal. No evidence was presented that the tortfeasor owned or operated a motor vehicle which was the proximate cause of the accident and the injuries suffered by appellant, a critical element to her cause of action. Judge Gilbert, writing for this Court, reiterated the standard by which we determine whether evidence constitutes more than mere speculation in negligence actions:

> Maryland has gone almost as far as any jurisdiction, to our knowledge, in holding that slight evidence of negligence may be sufficient to carry a case to the jury. *Fowler v. Smith,* 240 Md. 240, 213 A.2d 549 (1965); *Mazer v. Stedding, supra*[, 10 Md.App. 505, 271 A.2d 381 (1970)]. In *Fowler v. Smith, supra,* Chief Judge Prescott, speaking for the Court of Appeals, said:
>
>> 'The rule has been stated as requiring submission if there be any evidence, however slight, legally sufficient as tending to prove negligence, and the weight and value of such evidence will be left to the jury. *Ford v. Bradford,* 213 Md. 534, 132 A.2d 488. *Cf. Bernardi v. Roedel,* 225 Md. 17, 21, 168 A.2d 886. However, the rule as above stated does not mean, as is illustrated by the adjudicated cases, that all cases where questions of alleged negligence are involved must be submitted to a jury. They [sic] words 'legally sufficient' have significance. They mean that a party who has the burden of proving another party guilty of negligence, cannot sustain this burden by offering a mere scintilla of evidence, amounting to no more than surmise, possibility, or conjecture that such other party has been guilty of negligence, but such evidence must be of legal probative force and evidential value.

*State for Use of Balderston v. Hopkins,* 173 Md. 321, 196
A. 91, and cases cited; *Hevell v. Balto. Transit Co.,* 173
Md. 327, 196 A. 103; *Haddock v. Stewart,* 232 Md. 139,
192 A.2d 105. *Cf. Commissioners (etc.) v. Clark,* 94 U.S.
278, 24 L.Ed. 59 (not a negligence case). The rule, stated
in slightly different terms, is that where the facts are
undisputed, or the facts most favorable to the party
carrying the burden of establishing another party's negli-
gence are assumed to be true and all favorable inferences,
fairly deducible therefrom, are drawn in favor of the
burden-carrying party, and such undisputed facts (or the
said favorable facts and inferences) lead to conclusions
from which reasonable minds could not differ, then the
question of negligence, *vel non,* becomes a question of
law. *Bernardi v. Roedel, Suman v. Hoffman* (221 Md.
302, 157 A.2d 276); *Kantor v. Ash* (215 Md. 285, 137 A.2d
661), all *supra.*'

*Brock v. Sorrell,* 15 Md.App. 1, 6–7, 288 A.2d 640 (1972)(quot-
ing *Fowler v. Smith,* 240 Md. 240, 246–47, 213 A.2d 549
(1965)).

As the lower court noted, "there is no evidence from which
the trier of fact could conclude that the owner or operator of
the vehicle from which the metal piece allegedly fell breached
his duty of inspection." Specifically, appellant failed to pres-
ent any facts that would allow for a reasonable conclusion that
whoever or whatever caused the metal to be in the roadway
did so as a result of a negligent act.

On the issue of the duty to inspect, the trial court, while
finding *Carter v. Shoppers Warehouse, supra,* "not factually
apposite," it nevertheless found our decision in that case
instructive. There we explained:

Although the trial judge must interpret all natural and
legitimate inferences in the plaintiff's favor, where the plain-
tiff has not shown by any evidence that the injuries sus-
tained by him were a direct consequence of negligence on
the part of the defendant, and there is no rational ground
upon which a verdict for the plaintiff could be based, the

trial judge should direct a verdict in favor of the defendant. *Id.* at 232 [727 A.2d 958], 239 Md. 229, 210 A.2d 724 (citing *Rawls v. Hochschild, Kohn & Co.,* 207 Md. 113, 122, 113 A.2d 405 (1955)).

\* \* \*

Also of relevance is the Court of Appeals' decision in *Lexington Market Auth. v. Zappala,* 233 Md. 444, 197 A.2d 147 (1964), wherein a customer sued a parking garage operator for injuries sustained when the plaintiff slipped and fell on a spot of oil or grease in the parking garage as she returned to her car. The Court reversed a jury verdict in the plaintiff's favor and entered judgment for the defendant because the plaintiff did not meet her burden of proof "that the condition was caused by the proprietor or its employees, or that there was actual notice of the condition." *Id.* at 446, 197 A.2d 147. Although the operator should anticipate that oil or grease may leak occasionally from vehicles, he is not an insurer and *"we think it would be unreasonable to hold that it is his duty to continuously inspect and sand down any and all leakage as soon as it occurs, even if we assume that periodic inspections are necessary."*

*Carter,* 126 Md.App. at 163–64, 727 A.2d 958 (emphasis added).

The facts in the case at hand are more compelling considering that, at least the owner of the business in *Carter,* is generally charged with the duty to act upon the receipt of proper notice, under a theory of premise liability, to correct a hazardous condition that may result in injury to third parties. Whether an owner of the premises must continuously inspect its property is germane to the question of notice. That there is an ongoing responsibility to correct defects and hazardous conditions is constantly foremost in conducting a business where it is expected that invitees will be on the premises on a daily basis. In the instant case, although the owner or operator has an obligation to inspect and maintain his/her motor vehicle, the ability to discern that a metal piece of a

vehicle has rusted through to an extent that it will become dislodged is an event which cannot be as easily anticipated as the potential for injury to an invitee and, indeed, is an event which may never occur. This is particularly true if the rusted part of the vehicle is not subject to detection during normal use or maintenance.[6]

Appellant argues that the undisputed facts, in conjunction with the opinions of her experts, "give rise to an inference that the owner/operator failed to maintain (prevent or repair) rust and took the vehicle on the roadway in that condition." The void in appellant's theory is the absence of any evidence of the negligent act or course of negligent conduct which resulted in the dislodgement of a metal piece in the roadway.

Appellant, in her brief, recites facts which she contends that she "established through expert opinion and otherwise." The facts to which she alludes are essentially a recapitulation of the facts that the court found, in its opinion, *supra*, that "[appellant] could conceivably prove." Most notably, the piece of metal, according to the expert, "is consistent, to a reasonable degree of engineering certainty, with that used in car sheet metal and was rusted, leading to the conclusion reached by the experts, that it was a rusty car part that fell from a vehicle onto the road."

Notwithstanding that the foregoing expert opinion establishes that the piece of metal is consistent (better than fifty percent) with automotive sheet metal typically found in the

---

**6.** Our decision herein is confined to the facts of this case. The probability that normal inspection of the unknown vehicle would not have revealed the rusted condition or that dislodgement was imminent could reasonably be inferred from the size of the metal piece at issue and the lack of any physical characteristics which would identify from where on the unknown vehicle it originated. We need not and do not reach the question of whether a bumper, a muffler, or other more prominent parts of a vehicle give rise to an inference that an inspection of the vehicle would have revealed the rusted condition and thus place the owner or operator on notice, requiring him or her to correct the condition. A determination that the piece of metal dislodged as a result of a negligent act, under the circumstances extant, would be reduced to rank speculation.

outer skin of a car, the piece of metal was not rusted throughout. Moreover, at oral argument before a panel on this Court, the very real specter was raised that the rusted section of the identified motor vehicle may well have been from the curled area under the body of the vehicle. Assuming that the rusted metal was dislodged from the underbody of that vehicle, the operator would have had no opportunity to observe the deteriorating condition, except of course, during routine maintenance or repair, and there is no evidence from which it can be determined whether and when there was such an opportunity to inspect. In the absence of such an opportunity, the owner or operator, therefore, would not have been on notice of his/her duty to abate the corrosion or otherwise correct the hazardous condition. In sum, appellant has produced evidence to establish that the piece of metal was probably dislodged from a motor vehicle and that the rusted condition may well have caused it to dislodge, but there has been no showing of knowledge of the existence of the deteriorated state of the vehicle part and the attendant duty to correct it.

Consequently, we hold that, because no genuine dispute exists and appellant's evidence failed to establish a *prima facie* case of negligence, Interstate and Nationwide were entitled to judgment as a matter of law.

Appellant also cites cases from other jurisdictions for the proposition that uninsured motorist coverage would be "applicable to this factual scenario." We, like the court below, do not find any of these cases persuasive. Appellant seeks solace in two unreported opinions, *Lazovic, et al. v. State Auto Insur. Co.*, 1998 WL 382172 (Ohio Ct.App.1998), and *Delahunty v. Nationwide Insur. Co.*, 1996 WL 204271 (Ohio Ct.App.1996). We decline to accord these cases any precedential value.[7]

---

7. According to the Ohio Supreme Court Rules, unreported opinions from Ohio's intermediate appellate level court, the Court of Appeals, only have precedential weight within the judicial district from which the opinions were rendered. *Ohio Rules for Reporting Opinions* 2(G)(2). Although the Maryland Rules do not specifically proscribe the citing of foreign unreported opinions, *see Md. Rule* 1–104, appellant's reference to these cases requires a copy of the cases be served upon the

*Woosley v. State Farm Insur. Co.,* 117 Nev. 182, 18 P.3d 317 (2001), *Hale v. American Family Mut. Insur. Co.,* 927 S.W.2d 522 (1996), and *Muncy v. American Select Insur. Co.,* 129 Ohio App.3d 1, 716 N.E.2d 1171 (1998), also relied upon by appellant, are distinguishable in that they involve objects that became roadway debris, but were not specific parts of the vehicle that they had fallen off, *i.e.,* a ladder in *Woosley,* a rock propelled through a windshield in *Hale,* and a wooden pallet in *Muncy.* In addition, the *Hale* and *Woosley* plaintiffs each submitted their respective cases under the doctrine of *res ipsa loquitur.* Appellant, however, expressly rejects *res ipsa loquitur* as a basis for recovery.

We hold that appellant failed to present questions of material fact or facts from which reasonable inferences could be drawn that a negligent act caused the metal to be in the roadway causing injury to appellant. Appellees were thus entitled to judgment as a matter of law, and the lower court properly granted summary judgment to Interstate and Nationwide.

**JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**

---

opposing parties and this Court. *Ohio Rules for Reporting Opinions* 2(G)(3).